ARTHUR MELLON, PLAINTIFF-RESPONDENT, v. PENN-SYLVANIA-READING SEASHORE LINES, A CORPORA-TION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 21, 1951—Decided June 25, 1951.

416

*Mrs. Grace Heritage Smith* argued the cause for the appellant (*Messrs. Richards, Capehart, Smith & Wood,* attorneys).

*Mr. Carl Kisselman* argued the cause for the respondent (*Mr. Anthony F. Marino,* attorney).

The opinion of the court was delivered by

ACKERSON, J.   This is a tort action to recover for personal injuries and property damage arising out of the collision between plaintiff's automobile and an electric train of the Pennsylvania-Reading Seashore Lines at a grade crossing in the City of Camden.

The record before us discloses the following pertinent facts: the collision occurred on the evening of November 3, 1948, at a point where the defendant's tracks intersect Chelton Avenue, a public highway in Camden.   The defendant's right of way over Chelton Avenue consists of three sets of tracks running north and south, which cross the highway at right angles.   The crossing was protected by a watchman who was on duty from 6:00 A. M. to 6:00 P. M. as a notice posted on his watch box showed, and also by a crossing bell located at the southwest corner of the crossing and by the standard crossing signs.   The plaintiff, Arthur Mellon, driving his automobile, approached the crossing about 6:10 P. M. (after the crossing watchman had left) driving easterly on Chelton Avenue on his way from work in the Camden Brewery, where he had been employed for seven years, and which was situated several hundred feet from the crossing.   A fellow worker, Stanley Kaminski, driving an automobile about 100 feet ahead of the plaintiff, slowed down and passed over the

tracks. It is conceded that it was a bad night. It was wet and dark, and a fine mist filled the air. Plaintiff testified that he slowed down and came to a full stop at the crossing for several seconds, his headlights were on, and, after looking to his right and left and seeing and hearing nothing, he proceeded to cross the tracks. In doing so his automobile was hit by the lead car of defendant's electric train which was traveling in a southerly direction—from the plaintiff's left—on the most westerly track of defendant's main line to Millville. The force of the impact carried his automobile a distance of 150 feet causing its destruction and multiple injuries to the plaintiff for which he seeks damages in this suit.

The negligence alleged, as stated in the pretrial order, is that plaintiff's automobile "was struck without warning by the defendant's electric train * * *." The railroad denied negligence and set forth the separate defenses of contributory negligence and assumption of risk. At the close of the evidence, defendant moved for judgment pursuant to *Rule* 3:50 (amended November 10, 1949). The trial court denied the motion and submitted the case to the jury resulting in a verdict of $5,000 in favor of the plaintiff upon which judgment was entered in the Superior Court, Law Division. Thereafter, defendant moved for a new trial on the grounds that the verdict was against the weight of the evidence and excessive. This motion was also denied. Defendant appealed from the judgment so entered to the Appellate Division of the Superior Court, and, prior to hearing there, the appeal was certified to us on our own motion.

At the outset it must be borne in mind that the propriety of the lower court's ruling on the first motion, *i. e.*, for judgment in defendant's favor, is now challenged. Whether the verdict is excessive in amount or against the weight of the evidence are not matters presently before us for decision. Hence we are guided by the well settled principle that on a motion for judgment, the trial court cannot weigh the evidence but must accept as true all evidence which supports

the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Peter W. Kero, Inc., v. Terminal Construction Co.,* 6 *N. J.* 361, 370 (1951); *Cauco v. Galante, Ibid.* 128, 132 (1951). Where fair-minded men might honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury. *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.,* 3 *N. J.* 149, 154 (1949); *Antonio v. Edwards,* 5 *Id.* 48, 52 (1950).

Defendant insists that the trial court committed reversible error in denying its motion for judgment at the conclusion of the case, and rests its argument upon two main propositions, viz., (a) that plaintiff's proofs failed as a matter of law to establish any actionable negligence on the part of the defendant, and (b) that plaintiff was guilty of contributory negligence as a matter of law. The theory of the defense with respect to the first of these propositions is that the negative testimony submitted by the plaintiff to the effect that no statutory road crossing signal (*R. S.* 48:12–57) was heard prior to the accident is entitled to no weight in the presence of the affirmative evidence of defendant's employees to the effect that both the bell and whistle on the engine were in operation, and, therefore, does not create a conflict of evidence justifying the submission of the question to the jury as one of fact. On the basis of the record we cannot agree with this conclusion.

Plaintiff's witness, Stanley Kaminski, whose car preceded that of the plaintiff by some 100 feet testified that he stopped when he came to the crossing, put the car window down to listen for a bell, looked both ways, saw nothing and heard nothing and crossed over. Plaintiff himself swore that he stopped his automobile, with its headlights on, about 30 feet west of the main line track, looked both to the right and left, but heard "no bell or nothing." When asked whether he heard the whistle of the train, plaintiff answered "They don't have a whistle on it. They have a little bell but I did not

hear it." He also testified that the bell stationed at the crossing was not ringing and he did not see the train coming. Obviously both of these witnesses were in a position to have heard the engine bell or whistle if either had been sounded within the required distance as the train approached the crossing, and to have heard the stationary bell at the crossing if it had rung. Since plaintiff's witnesses were apparently attentive, on the lookout for warning signals, in a position to have heard if any had been given and testified that they heard none, the mere fact that defendant's witnesses testified affirmatively that the signals were given does not, under the well settled rule in this state, remove the question from the domain of the jury. See *Ackerley v. Pennsylvania R. R. Co.,* 130 *N. J. L.* 292, 299 (*E. & A.* 1943); *Mazanek v. Penna.-Reading Seashore Lines,* 125 *Id.* 394, 396 (*E. & A.* 1940); *Fernetti v. W. J. & S. R. R. Co.,* 87 *Id.* 268, 271 (*E. & A.* 1914); *Note,* 162 *A. L. R., pp.* 9, 52 *et seq.*

Defendant also contends that whether the crossing bell was ringing or not is immaterial on the question of defendant's negligence, since plaintiff did not rely upon the bell to warn him of an approaching train but made an independent observation for that purpose. Therefore, it is claimed, if the crossing bell failed to ring, such failure was not the proximate cause of the accident, citing *Horandt v. Central Railroad Co.,* 78 *N. J. L.* 190, 194 (*Sup. Ct.* 1909). The cited case, assuming it to have been rightly decided, has no application to the case *sub judice.* The situation in the *Horandt* case was the reverse of that presented by the case at bar. There the plaintiff's case rested upon the theory that they were totally unaware of the existence of the crossing, and that no adequate warning of its existence was given. The case *sub judice* presents a situation both of *scienter* and alleged care commensurate with the known and obvious danger inherent in the environment, a combination of circumstances manifestly presenting a jury question. The "Crossing Act" of 1909 (*R. S.* 48:12–84) enacted after the occurrence of the accident in the *Horandt* case, provides, in substance, that

where a railroad company has installed safety devices, such as a bell, at any grade crossing, a plaintiff, under specified conditions, shall not be barred of his action for failure to stop, look and listen before passing over such crossing. This statute, as we view it, was an additional make-weight in plaintiff's favor under the circumstances of the instant case. *Baer v. Lehigh and Hudson River Ry. Co.,* 93 *N. J. L.* 85, 87 (*Sup. Ct.* 1919), affirmed, *Ibid.* 446 (*E. & A.* 1919).

Defendant also argues that plaintiff was guilty of contributory negligence as a matter of law. The theory advanced for this contention is that the plaintiff, having chosen not to rely entirely upon the crossing bell (which he says was not ringing), but to make independent observations for his safety, was obliged to make proper observations. Therefore, if he looked and listened effectively, he would have heard the statutory crossing signals given by the train and would have seen its approach in time to have avoided the collision. This argument overlooks the rule, already mentioned, that on a motion for judgment the court cannot weigh the evidence but must give plaintiff the benefit of all evidence in his favor and the legitimate inferences therefrom. Obviously then, it cannot be assumed as a matter of law, on the record before us, that plaintiff relied entirely on his own observations regardless of the crossing bell, nor that reasonably attentive observation, under the prevailing conditions, would have revealed the approach of the train.

The question of contributory negligence is ordinarily for the jury. To justify a directed judgment on such ground as a matter of law, the contributory negligence of the plaintiff must appear clearly and conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men in the exercise of a fair and impartial judgment. In this posture of the evidence the rule is that where it is reasonably debatable as to whether or not the plaintiff exercised a degree of care commensurate with the risk of harm, the issue of contributory negligence is one for the triers of fact. *Bacak v. Hogya,* 4 *N. J.* 417, 426 (1950).

It is to be remembered that this accident occurred on a dark, wet and misty night when visibility was reduced because of the inclement weather conditions. Considering the testimony of plaintiff's witnesses that no statutory signals were given from the train; the crossing bell was not ringing; a motorist, 100 feet ahead of plaintiff, saw no train and passed over safely; the attention required in driving plaintiff's car; the presence of the watchman's shanty in proximity to the track in the direction from which the train approached; the general restrictions to view appearing on defendant's exhibit "D-6," and the adverse weather conditions, we have concluded that the question of contributory negligence was properly submitted to the jury.

The next assignment of error is that the trial judge incorrectly charged the jury with respect to defendant's duty to give a warning signal from its train, as required by *R. S.* 48:12-57, on approaching the grade crossing, in that he quoted only from that part of the statute referring to the ringing of a bell and not to that portion having reference to the blowing of a whistle. The judge quoted the first part of the statute as follows:

"Every railroad company shall place on each engine a bell weighing not less than 30 pounds, which shall be rung continuously in approaching a grade crossing of a highway, beginning at a distance of at least 300 yards from the crossing and continuing until the engine has crossed such highway."

The judge did not charge the remainder of the statute which continues as follows:

"or a steam whistle, which shall be sounded, except in cities, at least three hundred yards from the crossing and at intervals until the engine has crossed the highway."

It is insisted that the trial judge by omitting the latter part of the statute from his charge made an erroneous and misleading statement of the defendant's duty. Defendant claims that the statutory requirements are in the alternative,

either that the bell shall be rung or the whistle blown, citing *Blauvelt v. Erie R. R. Co.*, 81 *N. J. L.* 142 (*Sup. Ct.* 1911), and that the choice of the signal to be given lay solely within its discretion.

The statute, however, very clearly specifies that the part thereof dealing with whistles is not applicable within the limits of a city, and here the accident occurred within the City of Camden. Otherwise the phrase "except in cities" would have no useful purpose in the statute. This interpretation is consistent with one of the cardinal rules of construction that legislation should be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof. *Oldfield v. New Jersey Really Co.*, 1 *N. J.* 63 (1948). This exception in the statute is not without design and purpose, for there are obvious reasons why the blowing of a whistle signal is not appropriate in cities where the harshness and shrillness thereof would be a greater disturbance to the community than in the sparsely settled rural areas.

The cases of *Tischman v. Erie R. R. Co.*, 81 *N. J. L.* 268 (*Sup. Ct.* 1911), affirmed, 83 *N. J. L.* 793 (*E. & A.* 1912), and *Kosher Dairy Co. v. N. Y., etc., R. R. Co.*, 81 *N. J. L.* 145 (*Sup. Ct.* 1911), 83 *N. J. L.* 270 (*Sup. Ct.* 1912—after retrial), affirmed, 86 *N. J. L.* 161 (*E. & A.* 1914), are not to the contrary. While the accidents in both of these cases occurred in a city, the point raised here was not directly before the court. In the first case, where a charge similar to that in the case at bar was made, the appellate court refused to pass upon its legal propriety because of defendant's failure to object thereto. In the *Kosher Dairy Co.* case, the fact that a different rule applied in cities under the statute was not in issue, nor considered in the respective opinions of the appellate courts. We, therefore, conclude that the trial court did not err in charging as it did from the aforesaid statute.

Finally, error is alleged in the court's refusal to deliver seven specific requests to charge. These relate to negligence and contributory negligence and all, except the

sixth and seventh, were properly refused, either because they were sufficiently covered by the main charge, or gave no recognition to the principle of proximate cause as a factor in their application.

The sixth and seventh requests were as follows:

"6. I charge you, as a matter of law, that you are not permitted to find the railroad company negligent in this case because it did not station a crossing watchman at this crossing after 6:00 o'clock at night.

7. I charge you, as a matter of law, that you are not permitted to find the railroad company negligent in this case by reason of the fact that the crossing watchman left the crossing at 6:00 o'clock on the night of this accident."

The pretrial order, limiting the issues, asserted plaintiff's claim to be that "he was struck without warning by the defendant's electric train * * *." In answering interrogatories as to the particulars of defendant's negligence, plaintiff included among them "that no watchman was on duty at the aforesaid time and place." On plaintiff's case there was testimony that a watchman was on duty at the crossing until 6:00 P. M. and that he left at that hour and was not there when the accident occurred at about 6:10 P. M. Additionally there was evidence in the case that defendant on that day had watchmen on duty at other crossings in the vicinity of the one in question after 6:00 P. M. Although it appeared that the defendant had placed a sign on its watch box at the Chelton Avenue crossing, pursuant to *R. S.* 48:12–84, reading "Crossing Watchman on Duty from 6:00 A. M. to 6:00 P. M." and a watchman was there during those hours, nevertheless, we are of the opinion that the jury of laymen very naturally could have concluded that the accident was caused by the absence of the crossing watchman and that the railroad company was negligent in not continuing the protection of a watchman beyond 6:00 P. M. Of course, there was no such duty resting upon the company after having complied with the foregoing statute by posting the aforesaid notice, *Mente Bros., Inc., v. Pitney,* 134 *N. J. L.* 211 (*E. & A.* 1946). However

the difficulty is that the jury was not informed in the charge that there was no obligation on the part of the defendant to have a watchman on duty except during the posted hours and we think the defendant was entitled to have a specific instruction to that effect in order to avoid the danger of a verdict founded upon an erroneous conception of the defendant's legal duty. We, therefore, conclude it was harmful error to have refused to charge the sixth and seventh requests which were designed to that end.

The judgment below is accordingly reversed and the cause remanded for a trial *de novo*.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.