527 So.2d 583 (1988)
Rosa Lee BERRY, Plaintiff-Appellee,
v.
RAPIDES GENERAL HOSPITAL, INC., Defendant-Appellant.
No. 87-469.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*584 Ralph Kennedy, Alexandria, for plaintiff-appellee.
Gold, Weems, Bruser, Sharp, Sues & Rundell, Eugene Sues, Alexandria, for defendant-appellant.
Before GUIDRY, FORET and LABORDE, JJ.
FORET, Judge.
This is a personal injury action filed by Rosa Lee Berry against Rapides General Hospital, Inc. (Rapides General). The trial court rendered judgment in favor of plaintiff in the sum of $6,185.32. Rapides General has appealed, and plaintiff has answered the appeal, asking us to increase her award to the sum of $30,000. We reverse.
On Friday, January 14, 1983, at approximately 7:00 P.M., plaintiff was taken to the emergency room of Rapides General by her daughter, Curley Berry. Upon arriving at the emergency room plaintiff was seen by Dr. Fred Reed, the emergency room physician, with complaints of neck and shoulder pain. Dr. Reed diagnosed a possible cervical disc and immediately ordered x-rays. There is conflicting testimony as to what transpired from this point on. Plaintiff maintains that as she descended from the examination table located in the emergency room department, she stepped on a stool, causing her to fall backwards onto the floor. Plaintiff states that when she fell, she was being held by two nurses as well as her daughter and that, as best she can remember, the nurses continued to hold on to her until she hit the floor. Mary Avant was one of the emergency room nurses who assisted plaintiff that night. She states that she was the only hospital employee assisting plaintiff at the time of her fall, but she does acknowledge that plaintiff's daughter was also assisting. Ms. Avant also testified that plaintiff did not trip on anything but that her knees simply "buckled" when her feet hit the floor. Additionally, Ms. Avant states that plaintiff did not fall to the floor and that she continued to hold on to plaintiff and eased her down to the floor once she realized that plaintiff had lost her strength.
It is undisputed that Ms. Avant reported the incident to Dr. Reed, noting that plaintiff was complaining of back pain. He returned to reexamine plaintiff and ordered additional x-rays in order to rule out a possible fractured pelvis or fractured hip. The x-rays revealed no evidence of fracture and plaintiff returned home that same night with instructions from Dr. Reed to see her family physician for further treatment if her condition had not improved by Monday.
Thereafter, plaintiff consulted her family physician, Dr. Ahmad Mohammed, who referred her to Dr. Paul M. Davis, Jr., an orthopedic surgeon practicing in Alexandria. Dr. Davis first saw plaintiff on January 27, 1983 and continued to treat her on a regular basis until her discharge on December 7, 1984. His diagnosis is back sprain aggravated by a preexisting osteoporosis.
*585 The sole issue presented for our consideration on appeal is whether or not the trial court committed manifest error in finding that Rapides General was guilty of actionable negligence in this case. For the reasons hereinafter discussed, we reverse the judgment of the trial court and render judgment in favor of appellee, Rapides General.
The reasons for judgment of record in these proceedings indicate that the trial court was unable to make a specific factual determination as to how the accident occurred. Considering the evidence adduced at trial, the trial court was only able to conclude that "something unusual happened." However, the trial court felt that, regardless of whose version of the accident he accepted, Rapides General was negligent because it had a duty to protect plaintiff from falling, considering her age and physical condition. We disagree.
The record indicates that there was nothing about plaintiff's history or physical condition which would indicate that she was unable to walk a relatively short distance with the assistance of hospital personnel. Prior to the accident in question, plaintiff got around quite well and regularly walked to her church located approximately one block away from her home. On the night of the accident in question, plaintiff undoubtedly walked from her home to her daughter's vehicle, albeit with the assistance of her daughter. Furthermore, her complaints to the emergency room physician and the attending nurse were neck and shoulder pain which would not lead one to suspect that she might be unable to walk on her own. According to Dr. Reed, his examination and interview of the patient revealed that plaintiff was alert and fully ambulatory and had no complaints of weakness. He also stated that she had no complaints referable to her lower extremities. He further testified that he will order a wheelchair for a patient when he has reason to believe that the patient may not be able to walk, but saw nothing which would indicate that plaintiff might be unable to do so on the night of the accident in question.
Ms. Avant, the attending nurse, is an emergency medical technician and is trained to watch for symptoms in patients which may necessitate the use of a wheelchair. She observed plaintiff to be alert and ambulatory and, considering the nature of plaintiff's complaints, saw no reason to suspect that plaintiff could not walk to the x-ray department with Ms. Avant's assistance.[1] Although the testimony of plaintiff and her daughter is to the contrary, Ms. Avant states that at no time did plaintiff or her daughter ask for a wheelchair nor did they advise Ms. Avant that plaintiff was feeling weak or otherwise unable to walk. She states that she would have readily supplied plaintiff with a wheelchair had plaintiff or her daughter requested same. Additionally, Ms. Avant stated that patients are routinely escorted to the x-ray department without the use of a wheelchair unless there is something about the patient's physical condition which indicates otherwise.
In Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974), our Supreme Court defined the duty of a hospital towards its patients:
"A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case."
Thus, the mere fact that an accident happens or an injury occurs does not raise a presumption or inference of negligence on the part of the hospital. Musso v. St. Mary Parish Hospital Service, 345 So.2d 129 (La.App. 1 Cir.1977), writ denied, 347 *586 So.2d 262 (La.1977). The hospital is not an insurer of a patient's safety and is not required to guard against or take measures to avert risks which a reasonable person under the circumstances would not anticipate as likely to occur. Williams v. Sisters of Incarnate Word, Etc., 341 So.2d 1299 (La.App. 3 Cir.1977). Considering plaintiff's physical condition, alertness, and apparent ability to ambulate, we find that Rapides General, through its employees, had no reason to suspect that plaintiff could not walk to the x-ray department with assistance from hospital personnel.
Considering the above, we reverse the judgment of the trial court in favor of plaintiff, Rosa Lee Berry, and render judgment in favor of defendant, Rapides General, dismissing plaintiff's suit with prejudice.
All costs, both at the trial level and on appeal are assessed against the plaintiff.
REVERSED AND RENDERED.
NOTES
[1] Ms. Avant also testified that she had intended to escort plaintiff to the x-ray room prior to the accident in question.