643 A.2d 1

SAM AND GIUDITTA TOBIA, PLAINTIFFS–APPELLANTS, v. COOPER HOSPITAL UNIVERSITY MEDICAL CENTER, CLIFFORD BERNSTEIN, ROBERT SWEENEY, D.O., MARSHA HYLL, M.D., EMILY CAREY, R.N., AND MICHAEL LYNCH, R.N., DEFENDANTS–RESPONDENTS, AND ANTHONY FIORILLO, M.D., VICKI CARR, R.N., JOHN DOE A, M.D., JOHN DOE B, D.O., JOHN DOE C, R.N., JOHN DOE D, L.P.N., AND JOHN DOE E, ORDERLY, DEFENDANTS.

Argued January 20, 1993—Decided June 28, 1994.

*Eva H. Bleich* argued the cause for appellants (*Mattioni, Mattioni & Mattioni,* attorneys; *John Mattioni,* on the brief).

*Stacy L. Moore, Jr.,* argued the cause for respondents Cooper Hospital University Medical Center, Robert Sweeney, D.O., Emily Carey, R.N., and Michael Lynch, R.N. (*Parker, McCay & Criscuolo,* attorneys; *Mary Ann C. O'Brien,* on the brief).

*Thomas F. Marshall* argued the cause for respondent Clifford Bernstein, M.D.

*Brian W. Hunkins* argued the cause for respondent Marsha Hyll, M.D. (*Dughi and Hewit,* attorneys).

PER CURIAM.

This appeal concerns a class of medical patients whose inability to care for themselves may require an extra measure of care by health-care professionals. The medical professions recognize the existence of such a duty in the case of certain patients whose infirmity, be it the product of age, substance abuse, or mental derangement, may pose a danger of either intentional or unintentional self-injury. The issue before us is how to relate that infirmity of the patient to the doctrine of contributory negligence.

In *Cowan v. Doering,* 111 *N.J.* 451, 545 *A.*2d 159 (1988), we held that a health-care professional could not assert contributory negligence as a defense to a suicidal patient's claim of neglect when the professional's duty included exercise of reasonable care to prevent the patient from committing self-damaging conduct. The central question in this appeal, then, is whether that principle of law applies to other categories of patients, such as the aged, incapacitated, or infirm. We hold that when a health-care professional's duty includes exercise of reasonable care to prevent such a patient from engaging in self-damaging conduct, the health-care professional may not assert contributory negligence as a defense to a claim arising from the patient's self-inflicted injuries. Were we to rule otherwise, the law of comparative negligence would significantly undermine and dilute the duty of care that the profession itself recognizes. The subsidiary issue in plaintiffs' appeal is whether trial-court error in submitting to the jury the issue of contributory negligence of an infirm patient in removing herself from the stretcher is rendered harmless by virtue of the jury's collateral finding of no negligence on the part of the treating professionals. We conclude that the confusion that may have been created in the minds of the jurors by the erroneous

contributory-negligence charge is so inextricably intertwined with the jury's deliberations on the duty of the health-care professionals that the verdict is irreparably tainted.

## I

The case arises from plaintiff Giuditta Tobia's December 1987 admission to Cooper Hospital. (We shall refer only to her claims and not her husband's derivative claim.) Mrs. Tobia was eighty-five years old and was in urgent need of medical care. She was placed on a stretcher in the emergency room, and defendant Clifford Bernstein, who was then a fourth-year medical student, attended to her. (He is now a licensed physician. When we refer to him without his title, it is in the context of the incident and subsequent proceedings.) After Bernstein took a history of plaintiff's illness and while plaintiff was waiting to be taken to the X-ray area, plaintiff told Bernstein that she needed to use the bathroom.

The versions of the parties differ respecting exactly what happened next. Bernstein claims that plaintiff changed her mind and did not wish to use the bathroom. Because she seemed reasonably alert and competent, Bernstein left plaintiff sitting on the stretcher unattended. According to Mrs. Tobia, Bernstein lowered the stretcher's side rails and did not lock the wheels. Mrs. Tobia contends that she had to jump or slide to get off the stretcher, and that she fell to the floor in the course of doing so. She asserts that Bernstein was negligent in breaching Cooper Hospital's Emergency Room Policy and Safety Procedure No. 1, which specifies the following:

> Any patient not being attended, or directly supervised or observed, either by a nurse or a doctor, shall be secured by having safety side rails raised on stretcher. This procedure will be specially monitored when handling patients who have symptoms of alcohol, drug ingestion, are unconscious, confused or elderly.

Plaintiff contends that Bernstein's failure to raise the guardrails caused the initial hip fracture, and that Nurses Emily Carey and Michael Lynch, who placed plaintiff in a wheelchair following her fall, caused the fractured hip to dislocate. Apparently, Dr. Mar-

sha Hyll approved the nurses' actions. Before us, the parties characterized the case as one of credibility, in which Mrs. Tobia claimed that she had been more or less brusquely told to get to the bathroom by herself, while Dr. Bernstein contended that Mrs. Tobia must have taken herself off the stretcher at a later time without properly asking for assistance. Plaintiff magnified the credibility issue when, at trial, she volunteered responses to questions in English even before the interpreter had completed the translation, despite her prior assertion that she did not understand the physician's instructions because her first language is Italian.

The case is further complicated by the fact that it involves two injuries and jury determinations concerning the extent of each injury, as well as the potential aggravation of the first injury by the second. The trial court bifurcated the liability and damages phases of the trial, presumably in an attempt to clarify and isolate the issues for the jury. Unfortunately, during the liability phase, the jury had no knowledge of the fact that Mrs. Tobia had suffered a fracture, much less a dislocation. Pursuant to another trial-court ruling, the most that the jury knew was that plaintiff had fallen off the stretcher and then had been moved by the nurses, thus suffering two distinct injuries, which were referred to only in the abstract as "the injury" and "the reinjury." Thus, the jury had no sense of the extent of Mrs. Tobia's injuries during the liability phase.

We have no record of the charging conference, and thus we do not know the basis for submitting the question of Mrs. Tobia's contributory negligence to the jury. At oral argument, defendants conceded that they had not asserted in their summations any contributory negligence by plaintiff. Nonetheless, the trial court submitted a special interrogatory to the jury asking for assessment of comparative percentages of fault to the total of 100%, and the jury found that the only party at fault with respect to the accident was Mrs. Tobia. Although the court's charge to the jury attempted to limit the so-called contributory negligence to the first

incident, we cannot assess whether the jury thought that its 100% contributory-negligence ruling with respect to the first incident would make Mrs. Tobia responsible for all the consequences thereafter, including potential aggravation of the first injury.

The trial court denied plaintiff's motion for a new trial. The Appellate Division affirmed in an unreported opinion. That court held as follows:

> [C]onflicting inferences could reasonably have been drawn as to whether plaintiff exercised reasonable care and caution for her own safety at the time she attempted to get off the stretcher to go to the bathroom. The trial court, therefore, properly submitted the issue of plaintiff's negligence to the jury and properly instructed the jury on this issue.
>
> Beyond this, any argument concerning the trial court's instructing the jury with respect to plaintiff's contributory negligence was rendered moot by the verdict. The jury's verdict concerning plaintiff's contributory negligence ultimately had no significance in the outcome of the matter, since the jury found that none of the defendants [was] negligent.

We granted plaintiff's petition for certification, 130 *N.J.* 18, 611 *A.*2d 656 (1992), and now reverse.

## II

### A.

In a long series of cases, we have held that when a tortfeasor's duty includes exercise of reasonable care to prevent a party from engaging in self-damaging conduct, contributory negligence is barred as a defense. See *Green v. Sterling Extruder Corp.*, 95 *N.J.* 263, 471 *A.*2d 15 (1984) (denying contributory-negligence defense to manufacturer of blowmolding machine that injured worker who was using machine for reasonably foreseeable purpose); *Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 406 *A.*2d 140 (1979) (denying contributory-negligence defense to manufacturer of sheet-metal-rolling machine that injured worker who was using machine as part of assigned task). "As one writer * * * has said, '[o]nce it is established that the defendant has a duty to protect persons from the consequences of their own foreseeable faulty conduct, it makes no sense to deny recovery because of the nature of the plaintiff's conduct.'" *Green, supra,*

95 *N.J.* at 272, 471 *A.*2d 15 (quoting Patricia Marschall, *An Obvious Wrong Does Not Make a Right: Manufacturers' Liability for Patently Dangerous Products,* 48 *N.Y.U.L.Rev.* 1065, 1088 (1973)). Hence, to allow a defense of contributory negligence when defendants' duties included protecting plaintiff from foreseeable self-inflicted injuries makes no sense.

As health-care professionals, defendants assumed a duty to exercise that degree of care for plaintiff that would have been exercised by any reasonable member of the profession under the same circumstances. The hospital has established a standard of care for its attending professionals: specifically, that no patient should be left unattended on an emergency-room stretcher with the side rails down. A question of fact arose with respect to the extent of that duty. Defendants' experts testified that once a physician is satisfied that a patient is competent and capable of transporting herself to the bathroom, to leave that patient unattended is not a violation of the hospital's standard of care. To that extent, an appropriately-tailored instruction may require the jury to consider whether plaintiff was sufficiently capable of caring for herself. If the jury finds plaintiff self-sufficient, the hospital and its health-care professionals might not have breached the duty of care. However, to suggest to the jury that although the hospital had the duty to care for an incapacitated patient, the patient's lack of care for herself diluted that duty, is wrong.

In *Ostrowski v. Azzara,* 111 *N.J.* 429, 545 *A.*2d 148 (1988), we explained how the jury may consider a patient's lack of concern for her own health needs as an aspect of the damages claimed. In that case, a diabetic patient continued to smoke despite instructions to the contrary. We held that although such conduct might serve to minimize any damages attributable to the physician's neglect in attending to the patient's toe, it did not constitute contributory negligence. The theory is that the physician takes the patient as she is. The professional's duty of care is governed in part by the patient's physical condition. In this case, the

hospital's formulation of the relevant standard of care specifically encompassed the patient's condition.

We do not in any sense minimize patients' responsibility to care for themselves. Defendants can assert a patient's self-neglect to limit damages. Thus, if Mrs. Tobia had, while lying on the floor, deliberately violated the hospital professionals' instructions not to move, thereby aggravating her condition, a trier of fact could find that she had not mitigated her damages as she should have. However, that was not the theory under which the parties submitted this case to the jury. Presumably, Mrs. Tobia's alleged contributory negligence was that she was fully competent, yet aware that she was unable to care for herself, and thus should not have climbed off the gurney. The two assertions contradict one another.

### B.

The much more difficult question is whether the incorrect jury charge on contributory negligence was, in the words of the Appellate Division, "rendered moot" by the jury finding that defendants had not been negligent in any way. We believe that the erroneous charge may have affected those verdicts by improperly focusing the jury's attention on plaintiff's conduct, thus distracting the jury from the key question of whether defendants had been negligent.

We have considered similar issues before. In *Johansen v. Makita U.S.A., Inc.*, 128 *N.J.* 86, 607 *A.*2d 637 (1992), the plaintiff filed a products-liability action against the manufacturer of a miter saw that injured him. We held that the trial court's failure to instruct the jury that it could not consider the plaintiff's negligent operation of the saw in determining whether the saw had been defective was reversible error. Our comments in *Johansen* about the risks of an erroneous charge misleading the jury by focusing the jury's scrutiny on the plaintiff's conduct are pertinent to the case at hand:

> The danger that the jury might improperly focus on plaintiff's behavior in deciding the issue of product defect was especially acute in this case. Throughout the trial, defendants emphasized plaintiff's conduct in operating the saw * * *. Defendants maintained that plaintiff could have avoided injury by using due care or "common sense." Thus, the jury should have been instructed not to consider evidence concerning plaintiff's lack of care in deciding the question of design defect.
>
> [*Id.* at 102, 607 A.2d 637.]

*See also Jurado v. Western Gear Works,* 131 *N.J.* 375, 619 A.2d 1312 (1993) (holding that uncertainty about whether jury's answer to interrogatory referred to plaintiff's misuse of product undermined confidence in jury's finding of no product defect). Similarly, in this case, the jury may have focused on whether Mrs. Tobia was negligent, rather than on whether defendants were negligent. That possibility so undermines our confidence in the jury's verdict as to compel us to reverse and remand for a new trial.

That holding applies to both the first group of defendants (who were involved in the fall from the stretcher) and the second group of defendants (who were involved in the aftermath of the fall). This latter group contends that the trial court's instructions limiting the jury's consideration of Mrs. Tobia's contributory negligence to the first group sufficiently quarantined the improperly-submitted issue as to ensure the integrity of the verdicts of "no negligence" on their part. Were it not for the inevitable fallout at a second trial, we might let these verdicts stand. However, in a retrial of the first group of defendants, the entire focus would be on the absent second group as the group that had caused plaintiff's injuries. A retrial limited to the first group of defendants would present a jury with an incomplete view of the legal responsibilities of the parties. Additionally, we cannot be certain that the incorrect finding of the patient's contributory negligence in getting off the stretcher did not influence the jury's verdict on the duty of the second group of caregivers. The jury may have assumed that Mrs. Tobia's negligence had caused her injuries. However, as we have seen, a patient in her circumstance cannot be considered negligent at all.

In any retrial, the court should reconsider the fairness of bifurcation. *Rule* 4:38–2 reposes discretion in a court to order that liability and damages be tried separately when a trial of all issues may be "complex and confusing," or the bifurcation may yield a "substantial saving of time." In exercising that discretion, a court should consider the fairness to the litigant when the issues of damages and liability may be indivisible. In other words, if all or most of a claimant's damages are due to one of several incidents, a jury may not be able to evaluate the relative liabilities in a vacuum without knowing the nature and extent of the injuries incurred. "Extraordinary circumstances" may call for a single trial. *See Powell v. General Motors Corp.*, 107 *N.J.Super.* 29, 33, 256 *A.*2d 726 (App.Div.1969) (referring to exception to earlier administrative directive calling for bifurcation in cases in which three or more parties contest liability).

## C.

On a final note, we explain briefly why we have remanded for retrial plaintiff's actions against Cooper Hospital and Doctors Sweeney and Hyll.

We reinstate the action against the hospital because we have reinstated the actions against Dr. Bernstein and the nurses, all of whom were employees of the hospital at the time of Mrs. Tobia's injury. Thus, the doctrine of *respondeat superior* requires us to reinstate the suit against Cooper Hospital.

As for Doctors Sweeney and Hyll, we remand the claims of negligent supervision against them because the record contains sufficient credible evidence to support jury findings that they negligently supervised Dr. Bernstein and Nurses Carey and Lynch. Dr. Sweeney, as Assistant Director of the Division of Emergency Services at Cooper Hospital, was responsible for supervising medical students such as Bernstein in the emergency room. Dr. Hyll, as an attending physician and clinical instructor on duty at the time of Mrs. Tobia's injury, was responsible for all

patient care in the emergency room. Furthermore, Hyll saw the nurses place Mrs. Tobia in the wheelchair after her fall and allowed them to take Mrs. Tobia to the bathroom before conducting further examination. Finally, Bernstein testified that he was unaware of the emergency-room policy regarding side rails on stretchers. That testimony implies that neither Sweeney nor Hyll fulfilled their· supervisory duty of informing Bernstein of the safety policy.

We reinstate the suits against Doctors Sweeney and Hyll without resurrecting the "captain of the ship" doctrine that the Appellate Division rejected in *Sesselman v. Muhlenberg Hospital,* 124 *N.J.Super.* 285, 290, 306 *A.*2d 474 (1973). We are not allowing liability to be imposed on the doctors merely because they were attending physicians on duty at the time of plaintiff's injury, but rather because the jury could find they had specific duties to train and to supervise the other employees on duty.

### III

To sum up, this case is not about age; it is about infirmity and inability to care for oneself. That one of the alert octogenarians mentioned in the dissent was not the one left unattended on the stretcher is regrettable; the accident might not have happened. But Giuditta Tobia was the person on the stretcher and Cooper Hospital had a policy that one such as she not be left unattended without guardrails in place on her stretcher. She might well have been a young patient having an adverse reaction to a prescribed medication. The point is that medical policy dictates that if a patient is not competent to care for herself, the patient should not be left unattended unless certain precautions are taken. That is medical policy, not judicial policy. We may either respect that policy or disregard it. We believe that most health-care professionals would agree that the law should not disregard medical policy. Our dissenting members remind us that all health care comes at a cost, citing the current debate about national health-care reform. *Post* at 347, 643 *A.*2d 7. If the time comes when

society can no longer afford added care for the infirm, society will make that choice. For now, we do not believe that law should dilute medical policy. All that we hold is that if a jury should find that Mrs. Tobia was not competent to care for herself, the jury should not consider a failure to care for herself as contributory negligence.

The judgment of the Appellate Division is reversed and the case is remanded to the Law Division for further proceedings in accordance with this opinion.

POLLOCK, Justice, dissenting.

This appeal arises out of a medical-malpractice action brought by plaintiffs, Giuditta Tobia (hereinafter "plaintiff") and her husband, Sam, now deceased. The jury found that defendants, Cooper Hospital University Medical Center (Cooper), Clifford Bernstein, and other members of the hospital staff, had not been negligent and that the negligence of plaintiff had been the sole cause of her injuries. The trial court denied plaintiffs' motion for a directed verdict or for a new trial, and the Appellate Division affirmed the judgment on the verdict. The majority reverses the judgment of the Appellate Division and grants plaintiffs a second trial.

*Rule* 2:10 directs appellate courts that "[t]he trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." Without finding any such miscarriage, the majority nonetheless gives plaintiff a second chance to recover for her personal injuries. I respectfully dissent.

Understandably, the jury might have sympathetically viewed plaintiff, an older woman for whom English is her second language. Sympathy, however, does not justify an appellate court in depriving defendants of a jury verdict. Nor does sympathy warrant creating a new rule of law eliminating comparative negligence as a defense for health-care providers. Such a rule spreads

to other patients the cost of injuries sustained by a patient's own negligence.

I agree with the Appellate Division, which wrote:

> We are also satisfied that the trial court did not err by instructing the jury as to plaintiff's contributory negligence with respect to the first incident, that is, with respect to the injury that plaintiff sustained when she attempted to get off the stretcher without assistance and fell. The record plainly establishes that the trial court properly submitted the issue of plaintiff's contributory negligence to the jury. Moreover, the question of contributory or comparative negligence is usually one for the jury and will be resolved by motion for judgment only if it is not reasonably debatable. *Mellon v. Pennsylvania–Reading Seashore Lines,* 7 N.J. 415, 422 [81 A.2d 747] (1951); *Bacak v. Hogya,* 4 N.J. 417, 426–27 [73 A.2d 167] (1950). It must be remembered that a fact can be considered "reasonably debatable" even if it is established by uncontroverted evidence, if the evidence is susceptible of conflicting inferences. *Corcoran v. Hartford Fire Ins. Co.,* 132 N.J.Super. 234, 243–44 [333 A.2d 293] (App.Div.1975). Here, conflicting inferences could reasonably have been drawn as to whether plaintiff exercised reasonable care and caution for her own safety at the time she attempted to get off the stretcher to go to the bathroom. The trial court, therefore, properly submitted the issue of plaintiff's negligence to the jury and properly instructed the jury on this issue.

> Beyond this, any argument concerning the trial court's instructing the jury with respect to plaintiff's contributory negligence was rendered moot by the verdict. The jury's verdict concerning plaintiff's contributory negligence ultimately had no significance in the outcome of the matter, since the jury found that none of the defendants were negligent.

–I–

Plaintiff presented herself at Cooper with abdominal pain. She was placed on a gurney outside the x-ray room. All parties recognize that plaintiff fell off the gurney and broke her hip. The crux of this case is whether plaintiff or Bernstein, or both, were responsible for the fall. Bernstein, now a physician but then a fourth-year medical student on Cooper's staff, and plaintiff presented sharply-conflicting versions of the accident. Plaintiff claimed that while lying on the gurney, she told Bernstein that she needed to go to the bathroom. According to her, he lowered the side rail on the gurney and then left. Thereafter, she tried to get off the gurney. The gurney moved, and she fell to the floor, injuring herself.

Bernstein, however, testified that after plaintiff told him she needed to go to the bathroom, she twice refused his offers of help. He lowered the side rail so that she could sit on the gurney. At her request, he then left.

The jury could have found for plaintiff, particularly because Cooper had adopted a safety procedure that provides:

> Any patient not being attended, or directly supervised or observed, either by a nurse or a doctor, shall be secured by having safety side rails raised on stretcher. This procedure will be specially monitored when handling patients who have symptoms of alcohol, drug ingestion, are unconscious, confused or elderly.

Instead, the jury found that defendants had not been negligent, a finding that establishes that the jury believed Bernstein, not plaintiff. Although we may not be able to ascertain the specific basis for the jury's rejection of plaintiff's testimony, the record supports the conclusion that the jury could have found her to be evasive. Confronted with an evasive witness, the jury also could have wondered why her attorney produced a court interpreter for someone who answered questions on direct examination in English without the aid of an interpreter, someone who had communicated freely in English with Bernstein when providing her medical history at the hospital. We need not prolong the speculation, for the record supports the jury's rejection of plaintiff's testimony.

–II–

Without finding that the verdict was against the weight of the evidence or was otherwise infected, the majority nonetheless overrides it. The majority reaches this result by creating "a class of medical patients whose inability to care for themselves may require an extra measure of care by health-care professionals." *Ante* at 338, 643 *A.*2d at 2. The majority's new class of patients consists of people who are infirm because "of age, substance abuse, or mental derangement." *Ibid.* Old age, however, is not the same as drug abuse or mental derangement. The record, moreover, is devoid of any proof that plaintiff suffered from any infirmity that affected her ability to exercise due care for her safety while on the gurney. Indeed, the uncontroverted evidence

is that she was alert and independent. By equating plaintiff's age with incapacity or drug abuse, *ibid.*, and by finding, contrary to the jury verdict, that plaintiff was incompetent, the majority holds that plaintiff had no duty of care for her own safety while in the hospital and that her conduct was irrelevant as a matter of law. According to the majority, hospitals have a duty to foresee that patients will be negligent and that the failure "to prevent such a patient from engaging in self-damaging conduct" precludes a hospital from asserting "contributory negligence as a defense to a claim arising from the patient's self-inflicted injuries." *Ibid.* Thus, the majority creates a novel rule, under which a hospital virtually insures patients for injuries caused by their own negligence. Under the majority's holding, when patients are admitted to a hospital, they leave in the admissions office their duty of care for their own safety. I disagree.

Like the majority, I accept the proposition that part of a hospital's duty of care includes the duty to protect patients from foreseeable self-inflicted injuries. *Ante* at 338, 341, 643 *A.*2d at 2, 4. *See Cowan v. Doering,* 111 *N.J.* 451, 465, 545 *A.*2d 159 (1988) (stating hospital breached duty to prevent patient from attempting suicide, given patient's mental condition and history of self-inflicted injury); *Kent v. County of Hudson,* 102 *N.J.Super.* 208, 217, 245 *A.*2d 747 (App.Div.1968) (finding that hospital, which knew of patient's chronic confusion and resultant tendency to burn himself accidentally with cigarettes, had duty to protect patient from self-inflicted burns), *aff'd o.b.,* 53 *N.J.* 546, 251 *A.*2d 760 (1969); *see also Keyworth v. Southern Baptist Hosps., Inc.,* 524 *So.*2d 56, 59 (La.Ct.App.) (holding hospital staff liable to patient who freed self from restraining jacket and fell to floor; staff knew she had previously fallen out of bed after getting out of jacket), *writ denied,* 525 *So.*2d 1058, *and writ denied,* 525 *So.*2d 1061 (1988). That proposition restates the familiar principle that the duty of care one owes to another is reasonableness under the circumstances. *See Merenoff v. Merenoff,* 76 *N.J.* 535, 559, 388 *A.*2d 951 (1978) (stating, "ordinary standard of care applied in the marital context should enable a trier of fact to differentiate qualitatively

between the conduct of married and unmarried persons and to recognize that certain behavior as between a married couple is acceptable and reasonable, even though such conduct might well be considered unreasonable and result in liability if engaged in by unmarried persons"). I support the proposition, moreover, that hospitals should be sensitive to the possibility that elderly patients may require special attention. Hence, a jury could find a hospital negligent for leaving an elderly patient unattended on a gurney. In this case, however, the jury, fully aware of Cooper's regulation, found that Bernstein and the other defendants had not been negligent.

Hence, I believe the majority goes too far in holding that "a patient in [plaintiff's] circumstance cannot be considered negligent at all." *Ante* at 344, 643 *A.*2d at 5. In so holding, the majority creates for patients an exception to the basic principle requiring people to exercise due care for their own safety.

Across the country, courts have rejected the idea that a competent patient should not be held accountable for his or her behavior in a hospital. *See Haney v. Mizell Memorial Hosp.*, 744 *F.*2d 1467, 1479 (11th Cir.1984) (finding that jury "reasonably concluded" car-accident victim's behavior "was the cause of his disability" where victim was intoxicated and disobeyed hospital personnel orders not to move); *Brazil v. United States*, 484 *F.Supp.* 986, 990 (N.D.Ala.1979) (finding patient's disobeying doctor's orders by "trying to sit up, and turning from side to side" contributed to, and materially increased, back injury and resulting damage); *Seay v. Urban Medical Hosp., Inc.*, 172 *Ga.App.* 344, 323 *S.E.*2d 190, 193 (1984) (finding patient's sitting up and walking during hospital stay for neck injury "could have caused" subsequent injuries; "[t]herefore, a charge on her negligence was proper"); *Corlett v. Caserta*, 204 *Ill.App.*3d 403, 149 *Ill.Dec.* 793, 799, 562 *N.E.*2d 257, 263 (1990) (finding patient's refusal, on religious grounds, to accept "reasonable life-saving medical procedure" reduced physician's liability "to the extent that the patient's death was proximately caused by the patient's refusal of the reasonable

life-saving treatment"); *Berry v. Rapides Gen. Hosp. Inc.*, 527 *So.*2d 583, 585–86 (La.Ct.App.1988) (stating hospital had no duty to protect "alert and fully ambulatory" patient from falling when patient was walking with assistance of hospital staff); *Rogers v. Baptist Gen. Convention*, 651 *P.*2d 672, 674–75 (Okla.1982) (finding contributory negligence properly submitted to jury where mentally-ill patient left hospital and was struck by car on highway); *Elbaor v. Smith*, 845 *S.W.*2d 240, 245 (Tex.1992) (finding contributory negligence an issue for jury where patient refused to take antibiotics against doctor's advice and infection arguably resulted from such refusal); *see also Spirito v. Temple Corp.*, 466 *N.E.*2d 491, 493 (Ind.Ct.App.1984) (finding contributory negligence properly charged to jury where evidence showed patient at convalescent facility tried to transport herself without help in contravention of instructions).

*Berry, supra*, 527 *So.*2d 583, is instructive. In that case, the Court of Appeals of Louisiana rejected the concept of a hospital as insurer. The plaintiff was admitted to a hospital emergency room complaining of neck and shoulder pain. *Id.* at 584. She was injured when she fell getting off an emergency-room table with a nurse's assistance. *Ibid.*

The trial court found the hospital liable and awarded plaintiff damages, but the Court of Appeals reversed. *Ibid.* It noted that under Louisiana law "[a] hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require." *Id.* at 585 (quoting *Hunt v. Bogalusa Community Medical Ctr.*, 303 *So.*2d 745, 747 (La.1974)). The Court of Appeals then examined the plaintiff's condition, noting that

> there was nothing about plaintiff's history or physical condition that would indicate that she was unable to walk a relatively short distance with the assistance of hospital personnel.... [The doctor's] examination and interview of the patient revealed that plaintiff was alert and fully ambulatory and had no complaints of weakness.

*Ibid.*

Accordingly, it rejected the trial court's holding that the hospital "was negligent because it had a duty to protect plaintiff from falling, considering her age [seventy-two] and condition." *Ibid.*

*Spirito, supra,* 466 *N.E.*2d 491, also is pertinent. There, plaintiff was admitted to a convalescent home after suffering a stroke, which caused paralysis on her left side, leaving her in need of "assistance in sitting up and standing." *Id.* at 492. On two occasions, she was left unattended on the toilet for short periods of time; both times she was told not to attempt to get back to her wheelchair without help. *Ibid.* Nonetheless, plaintiff twice tried to reach her wheelchair unassisted, and fell both times, the second time suffering a broken hip. *Ibid.*

The jury found for the convalescent home, which had relied on the defense of contributory negligence. *Ibid.* The Court of Appeals affirmed, noting only that "[t]he evidence was sufficient to support the giving of the instructions" on contributory negligence. *Id.* at 493.

Given the facts of this case, the majority's holding extends beyond the reach of its rationale. In short, the majority has created a class in search of a member. By extending the rationale of its opinion to an older person of unquestioned competence, the majority suggests that all older people are incapable of caring for themselves. True, some such people cannot care for themselves. Many others, like plaintiff, remain independent. The record is devoid of proof that the condition that gave rise to plaintiff's hospitalization affected her judgment in any way. Thus, the majority's stereotypical view of older people will not support its unprecedented rule.

To avoid its confusion of old age with incompetence, the majority states that "[a]ll we hold is that if a jury should find that Mrs. Tobia was not competent to care for herself, the jury should not consider a failure to care for herself as contributory negligence." *Ante* at 346, 643 *A.*2d at 6. Not so. The jury has already found that she was competent to care for herself and that her contributory negligence was the sole cause of her injuries. Only by ignoring

that finding can the majority support the remand for a second trial.

Plaintiff is one of many older people who remain alert and independent into their eighties. Defendants presented Bernstein's uncontradicted testimony that plaintiff "seemed very alert and capable," that her hearing and eyesight were generally fine, and that she was "oriented as to person, place, and time." According to Bernstein, plaintiff's family described her as an independent person. Consistent with that description, plaintiff told Bernstein that "she did not want help" in getting off the gurney.

An increasing number of people, like plaintiff, remain competent and productive after eighty. The actress Jessica Tandy won an Academy Award at age seventy-nine, and in 1991, at age eighty-two, was nominated for another. At eighty-five, Justice Harry Blackmun is serving his final term on the Supreme Court of the United States. Justice William O. Brennan served on that Court until age eighty-four, and Justice Oliver Wendell Holmes, Jr. until he was eighty-nine. This Court has recalled several retired Superior Court judges over the age of eighty to continue to preside in judicial proceedings. Many lawyers, including retired judges and justices, continue to practice law into their eighties.

The list goes on. *See* Lydia Bronte, *The Longevity Factor,* 385–89 (1993). Age does not necessarily render people incompetent. Older people, like younger people, should be treated as individuals. I respectfully suggest that the majority should not reject the uncontradicted testimony and assume that an alert, capable, and independent woman is incompetent merely because she is eighty-five.

–III–

I am unpersuaded by the majority's statements that its new rule does not "in any sense minimize patients' responsibility to care for themselves," *ante* at 343, 643 *A.*2d at 4, and that hospitals "can assert a patient's self-neglect to limit damages." *Ibid.* Roughly translated, the majority holds that a jury may consider a patient's

conduct on damages, but not on liability. Such a rule circumvents the Legislature's attempt to limit liability through the comparative-negligence statute, *N.J.S.A.* 2A:15–5.1 to –5.8. The statute allows a plaintiff to recover only if his or her "negligence was not greater than the negligence of the person against whom recovery is sought...." *N.J.S.A.* 2A:15–5.1. It further requires the trier of fact to make separate damages and liability calculations whenever liability is disputed. *N.J.S.A.* 2A:15–5.2. Specifically, the trier of fact shall determine "the full value of the injured party's damages," *N.J.S.A.* 2A:15.5.2a, and shall allocate 100% of the liability, *N.J.S.A.* 2A:15–5.2b. Under the majority approach, however, the jury must subtract from the amount of plaintiff's damages an amount determined in accordance with plaintiff's liability.

Contrary to the comparative negligence act, the majority opinion permits plaintiffs to recover when they are responsible for more than fifty percent of their injuries. For example, a patient who is responsible for seventy-five percent of his or her injuries, calculated to be $100,000, formerly could not recover under the act; now he or she will recover $25,000. Whatever merit inheres in such a result is for the Legislature to decide.

A further effect of the majority opinion is to eliminate bifurcated trials in health-care cases. Under the opinion, defendants may not present evidence of plaintiff's conduct on the liability phase of the trial. Such evidence would be irrelevant because the patient "cannot be considered negligent at all." *Ante* at 344, 643 *A.*2d at 5. Thus, the jury would allocate 100% of the liability among defendants. Unaddressed by the majority is how the jury will treat plaintiff's negligence in the damages phase. At the damages hearing, if the jury determines that plaintiff is ninety-nine percent at fault, is plaintiff to recover only one percent of the damages awarded? Or may the jury assign some indeterminate value to a plaintiff's negligence in assessing damages? If so, the majority's opinion is an invitation to chaos.

If the jury had returned a verdict in favor of plaintiff, I expect that the Appellate Division would have affirmed the judgment on

that verdict. If so, I would not have voted to review that judgment. Absent a miscarriage of justice, appellate courts should accept jury verdicts whether they favor plaintiffs or defendants. Here, the jury did not believe plaintiff. In assessing her credibility, the jury performed a function that courts entrust to juries daily. Traditional respect for the role of juries prevents me from rejecting the jury's assessment of plaintiff's credibility and from fashioning a rule of law to circumvent that assessment.

*For affirmance*—Justices CLIFFORD and POLLOCK—2.

*For reversal and remandment*—Chief Justice WILENTZ and Justices HANDLER, O'HERN, GARIBALDI and STEIN—5.