239 N.J. Super. 370 (1989)
571 A.2d 348
RICHARD B. LEVENTHAL, PLAINTIFF
v.
ROSALYN LEVENTHAL, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Family Part Bergen County.
Decided October 11, 1989.
*371 Gary N. Skoloff, Esq., Skoloff & Wolfe for plaintiff.
Barry I. Croland, Esq., Stern, Steiger, Croland, Tanenbaum & Schielke for defendant.
KRAFTE, J.S.C.
This matter is before the court on a motion requesting the bifurcation of the matrimonial dissolution and custody dispute from the issues of support and equitable distribution. This court finds that there has been no showing of "unusual and extenuating circumstances" which would require affording a preferential treatment to this particular case by granting the husband a divorce prior to a resolution, by trial or otherwise, of alimony and the equitable distribution issues in this considerable marital estate.
The complaint for divorce was filed on February 16, 1987 by the husband, Richard Leventhal. While the parties each sought custody of the two minor children, both teenage girls, ages 16 and 13, have in fact, been living with their father for most of the time since the separation. Mrs. Leventhal is residing in the *372 marital home and was awarded $2500 a week pendente lite support. All discovery is complete, per court order of March 20, 1989. The parties express no hope of settlement of the economic issues without proceeding to trial.
Because of extreme calendar congestion, this case has not been reached for trial, there being a considerable number of older cases awaiting trial. Plaintiff is now requesting a bifurcation so that he may be granted an uncontested divorce, reserving the trial of the economic issues to a date to be set by the court, or alternatively, to list the case peremptorily.
As of the date oral argument was heard on the motion for bifurcation, this court had 626 dissolution cases on its individual calendar. Without even considering financial plenary hearings, "Holder hearings," true custody and visitation trials, reversals and remands from the Appellate Division, the burden created by the over-crowded calendar is evident. Plaintiff is number 51 of 109 on a special list of cases which have been reached for trial after they were two years or older. Needless to say, all parties placed on that list are also anxious to go to trial, to have their matters resolved, and to bring their lives back to normalcy.
Generally, the rationale behind the use of the procedural device of bifurcation is judicial economy. The decision to bifurcate should be made only after balancing the advantages and disadvantages and determining that there would be a greater benefit to the court with bifurcation than without. 27A C.J.S., Divorce, § 209(b). The purpose is not to ensure the absolute necessity of a second proceeding, as would be the case here, but rather reduce the probability of multiple litigation. Thus, in a tort action, bifurcation would be proper. Once the issue of liability is resolved, a trial on damages may not be necessary. The decision whether liability should be bifurcated from the issue of damages is within the sound discretion of the court. R. 4:38-2(b) provides that liability and damage claims may be, in effect, bifurcated, "whenever the court finds that a *373 substantial savings of time would result from trial on the issue of liability in the first instance...." If this language were somehow deemed to apply to a divorce case, the court would be compelled to find that initially trying the dissolution (liability) aspect would probably afford the referred to time-savings by eliminating or substantially reducing time needed for the financial (damages) issues. Pressler, Current N.J. Court Rules, Comment R. 4:38-2(b) (1989); Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 433 A.2d 801 (App.Div. 1981); Cotton v. Travaline, 179 N.J. Super. 362, 432 A.2d 122 (App.Div. 1981); Radigan v. Innisbrook Resort and Golf Club, 150 N.J. Super. 427, 375 A.2d 1229 (App.Div. 1977). However, in a matrimonial action, as the one presently before the court, where the economic issues are vast and complicated, a trial on the dissolution, no matter how short, will do absolutely nothing to simplify or reduce the prospect of further proceedings. Plaintiff alleges that there is no possibility of a settlement, so the effect of trying the issues separately would only serve to prolong and exacerbate this litigation. The bifurcation would have no benefit to the already over-burdened court calendar. Its sole effect would be to personally benefit plaintiff in his desire to remarry without addressing his responsibility to reach a final disposition of all other issues involved.
The State of New Jersey has no specific provision, either by statute or court rule, for bifurcation, where a judge may grant a divorce and defer consideration of the other issues in a matrimonial case. The Supreme Court Committee on Matrimonial Litigation, Interim Report (July 20, 1979) set forth its policy on bifurcation. The report noted the existing controversy regarding the procedure and the delays inherent in its use. The committee's recommendations encouraged a court rule or directive on bifurcation, but in its absence stated that bifurcation be granted "only in unusual and extenuating circumstances," and then only with the approval of the assignment judge. Id. at 24. The actual decision as to the merits of bifurcation of *374 this case has been deferred to this trial court by the assignment judge.
Other jurisdictions have faced similar questions. The New York courts have held that the use of bifurcation in a matrimonial action will not eliminate a further trial on economic issues and that the chance of resolution is best met in one trial of all the interrelated factors. Finkel v. Finkel, 120 Misc.2d 936, 466 N.Y.S.2d 906 (Sup.Ct. 1983). Some of the factors the Finkel court considered, in deciding the practicality of bifurcation, were the reduction of hardship, the speed of a just determination and help in clarifying various issues. Without the furtherance of those factors, a court should not grant bifurcation.
Here, the actual divorce itself will be uncontested, so the trial of the dissolution issue would be perfunctory and not protracted. However, it is readily apparent that the second trial on the economic issues would be long and controversial including testimony of a multitude of expert witnesses. Therefore, bifurcation would do nothing to hasten the resolution of the overall matter and would put defendant-wife in a position whereby plaintiff has his divorce but continues to control the pursestrings through the exclusive operation of the single largest marital asset, his business venture. New York agrees that, when there are complex financial issues, a settlement or easy answer may be less likely once the dissolution is granted. Fiorella v. Fiorella, 132 A.D.2d 643, 518 N.Y.S.2d 17 (App.Div. 1987), app. den. 70 N.Y.2d 796, 522 N.Y.S.2d 113, 516 N.E.2d 1226 (1987).
In Glazer v. Glazer, 394 So.2d 140 (Fla.Ct.App. 1981) a Florida court held that a split procedure may be used only if it is clearly necessary in the best interests of the parties and the children, following the prior state court ruling in Claughton v. Claugton, 393 So.2d 1061 (Fla.Sup.Ct. 1980). The Glazer court emphasized that only in exceptional circumstances should a trial court exercise its discretion to grant bifurcation. Specifically, Florida holds that the "convenience of one of the parties for *375 early remarriage" does not justify the issue of bifurcation. Claughton, supra at 1062. The major reason noted by plaintiff to justify the bifurcation of the present action is that he desires to marry the woman with whom he is living. However, deciding the divorce without addressing the extensive financial matters would yield a benefit to absolutely no one but plaintiff.
It must be remembered that the bifurcation procedure is condoned not only when the parties benefit by the clarification of the issues, but the court, too, profits through the easing of its calendar. It is evident that by giving plaintiff preferential treatment afforded no other litigant in a similar bind, neither the court nor its calendar will be served in any way. To grant this relief to plaintiff because of his superior financial status would do tremendous damage to the image of justice in this State.
Pennsylvania permits bifurcation pursuant to its Divorce Code and Rules of Civil Procedure. 23 Pa. Stat. Ann. § 401(b) (Purdon 1955); Pa.R.C.P. 1920.52(c) (West 1989). The separation of the divorce from the other issues is at the discretion of the court as long as it is by agreement of the parties. Jawork v. Jawork, 378 Pa.Super. 89, 548 A.2d 290, 292 (Super.Ct. 1988). Here, defendant has not agreed to a separate trial on the divorce, so that plaintiff's unilateral request should not be given particular weight.
In spite of a speedy divorce, the delay of the resolution of economic issues may have a negative effect on the parties' lives, since the entire matter is not reconciled. The Pennsylvania Legislature gives no mandate to a trial court to bifurcate but permits the relief only after carefully reviewing the facts and determining that there would be more to gain through bifurcation than not. See Mackey v. Mackey, 376 Pa.Super. 146, 545 A.2d 362 (Super.Ct. 1988); Leese v. Leese, 369 Pa.Super. 104, 534 A.2d 1101 (Super.Ct. 1987); Mosier v. Mosier, 359 Pa.Super. 187, 518 A.2d 843 (Super.Ct. 1986); Wolk v. Wolk, 318 Pa.Super. 311, 464 A.2d 1359 (1983). Overall, in spite of *376 the explicit authority gleaned from the legislature, the courts in Pennsylvania are cautioned not to grant the use of this procedural device without a finding that the consequences of bifurcation would be highly beneficial. The exclusive benefits of a bifurcation in this case would clearly inure to plaintiff while the court would still have the burden of the second trial and defendant, the uncertainity of her economic future. Neither the court nor defendant would receive any actual or perceived gain.
California, through its Family Law Act, as interpreted by the judicial council rules, has also authorized a trial court to bifurcate dissolution from other issues to be litigated, but the decision still remains squarely within the court's discretion. Bifurcation is granted only when there is no hope of reconciliation and it is found to be in the best interests of all parties. Cal.Civ.Code § 4000 et seq. (West 1983); In re Marriage of Lusk, 150 Cal. Rptr. 63, 86 Cal. App.3d 228 (Ct.App. 1979); Gionis v. Superior Court, 202 Cal. App.3d 786, 248 Ca.Rptr. 741 (Ct.App. 1988).
There is no doubt that even without the express authorization of the Legislature, New Jersey courts may decide whether it is in the best interests of the parties to permit a separate trial of ancillary matters after a divorce has been granted. Realistically, under New Jersey divorce practice as it exists today, the actual divorce appears to be ancillary to the financial issues. The court should decide whether the facts present circumstances which meet the criteria of the Pashman report's "unusual and extenuating circumstances" test. Here, the motion for bifurcation reaches the court after numerous, but unsuccessful, attempts to settle the financial issues. The pendente lite questions of support and maintenance have been a constant source of this court's time. Although discovery is closed by court order, the cooperation of plaintiff is still necessary to assure that the marital assets are fairly valued and the interests of defendant are protected as to equitable distribution.
*377 There remains the real danger that once divorce is granted, there will be much less incentive for plaintiff to finalize any other issues. This court cannot find any factor other than plaintiff's personal desire to remarry which, with due respect for plaintiff's sincerity in wishing to move forward with his life, does not reach the standards necessary to employ any special or preferential procedures on his behalf. Every argument propounded by plaintiff to buttress his claim for bifurcation applies with equal force to hundreds of cases pending before this court. If plaintiff is entitled to bifurcation, so are the others. To permit this would be to wreak havoc upon the efficient administration of the divorce calendar. Everyone would be divorced without any basic financial issues finalized, leaving all with hopelessly confused life factors.
Plaintiff contends that the custodial dispute between the parties should trigger bifurcation. While New Jersey generally discourages bifurcation, the State's concern with the best interests of the children provides that a custody hearing be permitted prior to the final hearing of the whole action where the court finds that custody is a genuine and substantial issue. R. 5:8-6. Here, the Leventhal children have been residing with their father since the separation almost three years ago, although the ultimate resolution is yet to be reached. While not stipulated, it appears that, because of the ages of the children, their expressed preferences and their residence with plaintiff, there will be no real, genuine or substantial issue of custody. Since the physical custodial arrangement is not of an emergent nature, there is no reason to separate the adjudiciation of this issue from the balance of the case. Additionally, settling the custody issue will do nothing to further plaintiff's main impetus for this motion  the ability to remarry. Thus, granting a separate custody trial would not serve to give the relief desired.
This court finds that it would not be in the best interests of the parties or the children to bifurcate the divorce from the other issues because the effect would be to complicate, prolong, or otherwise aggravate an already difficult case. It would be *378 inequitable to give this litigant preferential treatment by trying his divorce before other parties' who also wish to be free to get on with their lives.
The granting of bifurcation would not serve the purpose of eliminating any trial time whatsoever, but would merely permit plaintiff to continue to be in control of the marital assets without the incentive to resolve all other issues. A pending remarriage would inevitably create further barriers. There are absolutely no facts presented which are unusual or extenuating. For the reasons stated herein, the motion for bifurcation is denied.