728 A.2d 882

LOUIS DIODATO, PLAINTIFF, v. ROY ROGERS AND
COLTS TOWN TRAILS, DEFENDANTS.

Superior Court of New Jersey
Law Division
Monmouth County

Decided November 6, 1998.

*Brian D. Drazin,* for plaintiff.

*Wayne S. Wallace,* for defendants.

D'AMICO, J.S.C.

Plaintiff Louis Diodato alleges that on September 26, 1993, he slipped and fell in the bathroom of the Roy Rogers Restaurant owned and operated by defendant Colts Town Trails. Over the objection of plaintiff's attorney, this case was assigned for a trial as to liability only. The attorneys selected a jury and delivered opening statements, but the judge was unable to continue with the trial. The matter was therefore assigned to this court.

Before calling his first witness, counsel for the plaintiff renewed his objection to bifurcation of plaintiff's liability and damage claims. He represented that the plaintiff's expert witnesses were available and the plaintiff would be prejudiced by trying the case as to liability only because he sustained a concussion when he slipped and fell. Counsel argued that the concussion impaired the plaintiff's ability to recall the specific circumstances of his fall and that plaintiff's treating neurologist should be permitted to explain to the jury what a concussion does and how it can affect the memory of the patient. This court overruled plaintiff's objection to bifurcation.

Plaintiff attempted to prove defendant's liability through the testimony of Paul LaFrance, the manager of the Roy Rogers Restaurant, and other employees of defendant. LaFrance re-

called that the store was busy on the day in question and that it had rained, admitted that the bathroom got slippery when the tiles got wet, and admitted that there were no mats in the men's room. There was a mat by the front door on occasion, but LaFrance was not sure it was there on the date of the accident. There was no mat or runner in the hallway leading to the men's room. Although a "wet floor" sign was put down in the dining area near the registers, there was no sign in the vicinity of the bathroom.

The Roy Rogers Restaurant served french fries and other foods which would cause the floor in the kitchen to become greasy and slippery. The grease would be mopped up with a wet mop. There was more than one mop, but the mops were used interchangeably in the kitchen, customer areas and bathrooms. LaFrance acknowledged that Roy Rogers employees did not use any soap or detergent but rather used hot water and ammonia once a week to clean the floors.

The plaintiff testified that when he entered the bathroom on the day in question, he turned to the left and slipped. His feet went out from under him, he reached out while falling back and to the left, and his arm got caught on some object. He heard a tear in his arm and shoulder when he fell, and he hit something very hard—either a toilet seat or a urinal. He lost consciousness briefly and was lying on the floor when he woke up, at which point he was dazed. He put his hands on the floor and felt a slimy or greasy substance.

The strategy of counsel for the defendant was to attack plaintiff's credibility. He began by questioning LaFrance about an incident report he had prepared. Although he reported that the plaintiff had told him he slipped on the men's room floor, LaFrance testified that the plaintiff did not say that he slipped on a greasy slimy floor as he walked into the men's room; did not say that he got his arm caught under a faucet; did not say that he fell backwards, went all the way over to the other side of the men's room and struck his head and neck against the toilet bowl; and did not say that he flew into the air, hitting his back on the floor.

On direct examination by his attorney, the plaintiff remembered reading the incident report but stated that he did not comprehend it at the time of the accident. He said he found out later that he had a concussion which got worse. The court sustained defense counsel's objection to this comment since it called for a diagnosis. The jury was therefore told to disregard it. The plaintiff was permitted to testify, however, that he had a bump on his head, that he went to the Middletown EMO the next day, that he had a headache and throbbing in the head, and that his shoulder hurt.

On cross-examination, plaintiff stated that he had a recollection of some of his conversation with LaFrance but only a vague recollection of how he fell. At this point, defense counsel confronted the plaintiff with his answers to interrogatories in which he stated that as he walked into the bathroom, the toilet and sink were to the left and center respectively. As he turned left toward the sink his left leg slipped and his left arm got caught momentarily between the sink and faucet. As his arm slipped out, he struck his head and neck on the toilet, landing on his lower back on the terra cotta floor.

Defense counsel further confronted plaintiff with his deposition taken March 2, 1995, at the beginning of which plaintiff was asked to draw a general diagram of the restaurant and the bathroom. Plaintiff said at that time that he had no specific recollection of the scene of the accident. That being understood, plaintiff then proceeded to draw two diagrams. The first diagram showed the inside of the restaurant. The second diagram showed the men's room and included details such as the doorway, the location of the toilet, sink and urinal, the route he took, and the place where he fell.

Plaintiff testified at the deposition that he pivoted left and when he was near the place of the fall, he tried to make a second left, slipped, and went up four feet into the air. He further testified that he tried to grab onto something with his left hand—anything he could get his hand on—and that his hand touched the sink. He stated that his left arm got stuck between an object and the sink

or in the area of the sink. He was unsure whether his head hit the toilet, toilet seat or the urinal because he was dazed at the time.

Defendant then recalled LaFrance, who testified that the plaintiff's diagram of the bathroom was inaccurate in terms of the location of the sink, the urinal and the toilet. LaFrance then drew his own diagram which he said accurately showed the layout of the bathroom. In addition, Mr. LaFrance showed a video tape which he prepared for training purposes shortly before the accident which showed the actual location of the sink, toilet and urinal.

As to plaintiff's alleged injuries, LaFrance indicated that the plaintiff did not complain of problems in the leg, neck or back. When directed to the portion of the incident report relating to medical attention, LaFrance noted that plaintiff did not want medical attention or first aid and did not want to go to the hospital. LaFrance said that plaintiff looked fine and appeared calm.

Arguing that defense counsel had raised the issue of whether plaintiff appeared hurt and required treatment and had given the jury the impression that plaintiff refused medical treatment, plaintiff's counsel requested a stipulation that plaintiff received medical treatment the day after the accident. Although defense counsel did not agree to that stipulation, this court ruled that plaintiff could be asked about his injuries and their progression to the point of the emergency treatment received the day after the accident.

Defense counsel then showed plaintiff a copy of the summons and complaint his attorney filed on November 24, 1993. He asked plaintiff to describe the injuries listed in the complaint. Defense counsel also focused on a comment by plaintiff that he landed on his butt, asking plaintiff to confirm that he based all of his injuries to his neck, shoulder, knee, leg, and head on this recollection.

In his summation, counsel for defendants argued that plaintiff was not credible with regard to the alleged fall-down accident.

He argued that plaintiff filed a lawsuit in which he alleged that he fell and sustained any number of injuries, the litany of which ranged from top to bottom, including the neck, left shoulder, arm, right knee, leg, back, and fingers—all related to the incident. Counsel asked the jury "does that have the ring of truth?". The court sustained plaintiff's counsel's objection to this rhetorical question and explained to the jury that this was a liability only trial in which neither party was allowed to present medical testimony. The court further instructed the jury that the only questions with regard to which injuries could be considered were what was reported at the time of the incident and what immediate care was sought on the next day.

Defense counsel then argued that in answers to interrogatories and deposition testimony, plaintiff had a specific recollection about what happened and about the location of his fall. He pointed out, however, that plaintiff's layout of the bathroom was not accurate as shown by LaFrance's testimony, the testimony of other employees of Roy Rogers, and the video tape made by LaFrance.

Defense counsel argued that plaintiff's story was made up to cover the losses he was alleging. In effect, counsel argued to the jury that the plaintiff was fitting the injuries he was claiming to a specific recollection about getting his arm caught under the sink and then hitting his head and neck on the toilet. Counsel pointed out that it was only at trial that the plaintiff disavowed his own stories and was not really sure about what happened. He argued that the plaintiff's motive for doing so was to explain the discrepancies between his story and the actual layout of the bathroom.

The jury found by a vote of 5–1 that defendant Roy Rogers was not negligent. Plaintiff has moved for a new trial pursuant to R. 4:49–1, arguing that the strategy of the defense throughout the trial was to demonstrate that the plaintiff was not credible because the injuries he claimed were not believable and could not have occurred in a fall. Plaintiff contends that without the benefit of medical proofs, he was unable to rebut this argument and was therefore placed at a fundamentally unfair disadvantage.

Defendant asserts that the jury's verdict was in accordance with the weight of the evidence adduced at trial. Defendant contends that the jury did not find plaintiff's testimony credible because of prior inconsistent statements, uncertainties and contradictions. Defendant also points out that it was plaintiff's attorney who first brought up the issue of plaintiff's injuries during the questioning of LaFrance, and it was plaintiff who offered LaFrance's accident report into evidence. In addition, defendant argues that since plaintiff was allowed to testify about his injuries and the medical treatment he received on the day after the accident, he cannot now argue that he was prejudiced.

R. 4:49–1 instructs a trial judge to grant a motion for a new trial if "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." *see also, Lindenmuth v. Holden,* 296 *N.J.Super.* 42, 48, 685 *A.2d* 1351 (App.Div.1996). A miscarriage of justice is a "pervading sense of wrongness needed to justify an appellate or trial judge undoing of a jury verdict ... which can arise ... from manifest lack of inherently credible evidence to support the finding, obvious overlooking or underevaluation of crucial evidence, or a clearly unjust result." *Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 599, 379 *A.2d* 225 (1977).

The trial of this case was bifurcated pursuant to *R.* 4:38–2(b) which reads as follows:

> Separation of Liability and Damage Claims. Whenever multiple parties, issues or claims are presented in individual or consolidated actions and the nature of the action or actions is such that a trial of all issues as to liability and damages may be complex and confusing, or whenever the court finds that a substantial saving of time would result from trial of the issue of liability in the first instance, the court may on a party's or its own motion, direct that the issues of liability and damages be separately tried. Except in extraordinary circumstances, the issue of liability shall be tried first, and if the order of bifurcation otherwise directs, the reasons therefor shall be explicitly stated therein.

In addition to the rule, there is a Supreme Court Directive # 3–77 issued October 17, 1977, which reads as follows:

The Supreme Court desires that pursuant to *Rule* 4:38–2(b), which provides for permissive and not mandatory bifurcation, the issue of liability may be tried separately and judges are encouraged to utilize the rule and try the issue of liability first in cases where they feel it may expedite the disposition of the case.

When reviewing a prior memorandum to the same effect issued by the Administrative Office of the Courts on March 4, 1966, the Appellate Division held in *Powell v. General Motors Corp.*, 107 *N.J.Super.* 29, 256 *A.*2d 726 (App.Div.1969) that this "practice rule" contemplates, on its face, a *bona-fide* consideration by the judge as to whether the facts and circumstances of the particular case meet the stated criteria for a separate trial of liability. The rule is "generally to be followed by the trial courts, saving extraordinary in a particular case, not within the contemplation of the memorandum, and justifiably calling for a single trial." *Id.* at 33, 256 *A.*2d 726.

The Appellate Division has also held that bifurcation of the issues of liability and damages is within the sound discretion of the trial judge, which the Appellate Division will not disturb on appeal absent an abuse of discretion. *See Thompson v. Merrell Dow Pharm.*, 229 *N.J.Super.* 230, 255, 551 *A.*2d 177 (App.Div.1988). The Appellate Division has acknowledged, however, that in some cases it would be persuaded to grant a new trial where proofs of damages were inadvertently withheld because they were thought to be germane only to damage, not liability issues. *See Malaker Corp. v. First Jersey Nat'l Bank*, 163 *N.J.Super.* 463, 489, 395 *A.*2d 222 (App.Div.1978).

The New Jersey Supreme Court has addressed the fairness of bifurcation in the case of *Tobia v. Cooper Medical Center*, 136 *N.J.* 335, 643 *A.*2d 1 (1994), in which the plaintiff brought a medical malpractice action against doctors and nurses claiming that she was injured when she fell while climbing off a gurney, the rails of which were not raised. Plaintiff further contended that she was reinjured during post-accident treatment efforts. *Id.* at 339, 643 *A.*2d 1. The Supreme Court held that reversible error was committed when a jury charge on contributory negligence was given in circumstances where it may have improperly focused the

jury's attention on the patient's conduct, thus distracting the jury from the key question of whether medical personnel were negligent in failing to prevent the plaintiff from engaging in self-damaging conduct. *Id.* at 347, 643 *A.*2d 1. The Supreme Court remanded the case to the Law Division for retrial, noting as follows:

> In any retrial, the court should reconsider the fairness of bifurcation. *Rule* 4:38–2 reposes discretion in a court to order that liability and damages be tried separately when a trial of all issues may be "complex and confusing," or the bifurcation may yield a "substantial saving of time." In exercising that discretion, a court should consider the fairness to the litigant when the issues of damages and liability may be indivisible. In other words, if all or most of a claimant's damages are due to one of several incidents, a jury may not be able to evaluate the relative liabilities in a vacuum without knowing the nature and extent of the injuries incurred. "Extraordinary circumstances" may call for a single trial. *See Powell v. General Motors Corp.,* 107 *N.J.Super.* 29, 33, 256 *A.*2d 726, (App.Div.1969) (referring to exception to earlier administrative directive calling for bifurcation in cases in which three or more parties contest liability).
>
> [*Id.* at 345, 643 *A.*2d 1.]

The question presented in this case—whether a miscarriage of justice can result from a bifurcation of liability from damages where precluded medical proofs are relevant to the plaintiff's credibility on liability issues—has not been addressed in detail in any reported New Jersey case. It is therefore appropriate to analyze the intent and purposes of bifurcation in light of the plaintiff's contentions.

 The bifurcation rule was designed to replace dismissal as the corrective for litigation overburdened with claims or issues unsuited for common trial. *See* Schnitzer & Wildstein, *N.J. Rules Service,* § 4. Its general object is to further convenience, in part through calendar control, and to combat prejudice. *See* Schnitzer, *supra,* § 2, *see also, Lis v. Robert Packer Hospital,* 579 *F.*2d 819, 824 (3rd Cir.1978). The standards for separation are as flexible as required by furtherance of convenience, avoidance of prejudice, resolution of complexity and reduction of confusion. *See* Schnitzer, *supra,* § 4. Limitation of costs, the achievement of other economies and calendar dispatch have also justified trial separation. *Ibid; Leventhal v. Leventhal,* 239 *N.J.Super.* 370, 372, 571

*A*.2d 348 (Ch.Div.1989) (citing judicial economy as a primary reason for use of bifurcation).

For defendants, one of the greatest benefits of bifurcation is the reduction of liability judgments based on juror sympathy for plaintiffs. *See,* G. Lee Garrett, Jr. and Anthony E. Diresta, *Strategies of Multi–Claim Litigation and Settlement Techniques,* 289 *Practising Law Inst. Lit. and Admin. Practice Course Handbook Series* 473, 515 (1985). This is especially true in personal injury litigation, where injuries are described in gross detail before the jury. *See id.* at 518. In addition, bifurcation may reduce costs for defendants who prevail on the liability determination. *See Leventhal, supra,* 239 *N.J.Super.* at 372, 571 *A*.2d 348. Once the issue of liability is resolved, a trial on damages may not be necessary. *Ibid.* Bifurcation is also useful in decreasing the complexity of cases involving multiparty litigation and in cases involving unusually difficult issues, such as patent and copyright cases, or complex mass tort or products liability cases. *See* Jack B. Weinstein, *Routine Bifurcation of Jury Negligence Trials: An Example of the Questionable Use of Rule Making Power,* 14 *Vand.L.Rev.* 831, 840–841 (1961).

The bifurcation rule has sparked heated controversy, however, among members of the legal profession. *See Lis, supra,* 579 *F*.2d at 824. Despite its efficiencies, bifurcation can segment issues traditionally heard as a unit. *See* Stephan Landsman, Shari Diamond, et. al., *Be Careful What You Wish For: The Paradoxical Effects of Bifurcating Claims for Punitive Damages,* 1998 *Wis.L.Rev.* 297, 300 (1998). It can also limit the jury's role by restricting the trial to narrow issues, without allowing the jury to consider the underlying policy or law or to ameliorate the harshness of rules. *See ibid.* Bifurcation may also affect the outcome of the case. *See Lis, supra,* 579 *F*.2d at 824. As Judge Weinstein has observed, "[e]ach party is entitled to a traditional trial by jury—i.e., with all the evidence and issues presented at one time. . . . By changing the jury trial in a way which, by hypothesis, will change the result, the modification affects the practical sub-

stantive rights of the parties." Weinstein, *supra*, 14 *Vand.L.Rev.* at 852.

Due in part to these competing views, the bifurcation rule contemplates a bona-fide consideration by the judge as to whether the facts and circumstances of the case meet the criteria for separate trials. *See Powell, supra,* 107 *N.J.Super.* at 33, 256 *A.*2d 726; *see also, Lis, supra,* 579 *F.*2d at 824 (rejecting the view that separation of trials should be routinely ordered). Bifurcation may not be appropriate due to idiosyncratic reasons particular to a case. *See Garrett, supra,* at 521. Furthermore, discretion as to bifurcation should be exercised "in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." *See O'Shea v. Mignone,* 50 *Conn.App.* 577, 719 *A.*2d 1176, (1998).

There are three New York cases which are instructive on the limitations of bifurcation where the nature of the injuries has an important bearing on the issue of liability. In *Addesso v. Belting Associates,* 128 *A.D.*2d 489, 512 *N.Y.S.*2d 416 (App.Div.1987), which involved a two-car accident, plaintiff had minimal recollection of the incident and therefore could not render an accurate estimation of the speed at which the defendant was traveling when the accident occurred. In order for the plaintiff to sustain his burden of proof and to rebut defendant's assertion that he was only traveling at twenty miles per hour, it was necessary to introduce evidence concerning the nature and extent of his injuries. This evidence would enable the jury to consider and evaluate the force of the impact and arrive at an approximation of the rate of speed. The court held that "the extent of the injuries was inextricably intertwined with the question of liability" and so a combined trial should have been ordered. *Id.* at 416.

Similarly, in *DeGregorio v. Lutheran Medical Center,* 142 *A.D.*2d 543, 529 *N.Y.S.*2d 903 (App.Div.1988), the court found that the issue of damages was probative in determining how the incident occurred. Plaintiff alleged that defendant used excessive force in defending himself, and plaintiff maintained that proof of

damages would demonstrate that the struggle was more intense than defendant's depiction of it. The court held that evidence of injuries was vital to plaintiff's ability to rebut the defendant's claim of self-defense; therefore, plaintiff was entitled to a combined trial.

In *Roman v. McNulty*, 99 *A.D.*2d 544, 471 *N.Y.S.*2d 625 (App. Div.1984), plaintiff contended that medical evidence concerning the nature of her injuries was necessary to corroborate her version of how the accident happened. Plaintiff alleged that she was struck by the front of defendant's vehicle while defendant asserted that plaintiff walked into the side of the car. Plaintiff's physician would have testified that her injuries could only have been caused by a frontal impact with a motor vehicle and not by a glancing impact with the side of the vehicle. The court granted the motion for a combined trial on liability and damages.

■ These New York cases suggest that when ruling on a motion for new trial, the court must consider not only the effects of bifurcation on the plaintiff's ability to prove his or her own case, but also its effect on the plaintiff's ability to rebut defendant's allegations. When the liability issue hinges primarily on the issue of the plaintiff's credibility, and the only effective means to rebut an attack on credibility is the introduction of medical evidence, bifurcation has a substantial capacity to cause a miscarriage of justice.

■ In this case, defense counsel's trial strategy was to attack plaintiff's credibility. In his summation, he argued that the actual layout of the bathroom was inconsistent with plaintiff's version of the fall, that the plaintiff's account was not credible, that plaintiff's story was fabricated to substantiate the injuries he claimed to have suffered, that plaintiff was not really sure what happened, and that plaintiff disavowed his own stories at trial. He suggested that plaintiff was hiding the inconsistencies in his story behind a lack of recollection.

While it is true that plaintiff was permitted to testify about his injuries and the treatment he received the day after the accident, this court did not permit any testimony about the concussion plaintiff allegedly suffered as a result of the fall. The court further instructed the jury that it could consider the testimony about the plaintiff's injuries only on the issues of what plaintiff reported at the time of the incident and what immediate care was sought on the next day. Being thus deprived of the opportunity to present medical evidence explaining plaintiff's injuries and relating them to the fall, plaintiff's counsel was unable to counter effectively the allegation that the injuries were not believable and would not have occurred in a fall. Bifurcation also prohibited plaintiff from presenting evidence that the concussion he sustained impaired his ability to recall the events and affected the accuracy of his testimony.

The separation of liability and damages in this case resulted in the exclusion of crucial evidence, gave the defendant an unfair advantage, and precluded attainment of the goals of bifurcation by creating prejudice, rather than reducing it. Plaintiff's motion for a new combined trial on the issue of liability and damages will therefore be granted.