ZAGER, Justice
(concurring specially).
Although I agree with the result reached by the majority in this case, I write separately because in my opinion the court has the inherent authority to bifurcate the entry of a decree of dissolution of marriage with the entry of a supplemental order concerning the division of property. Further, while I agree with the majority that the legislature may have the ability to limit the court’s authority to bifurcate these proceedings, the legislature has not done so here. Unlike the majority, I do not read Iowa Code section 598.21(1) (2013) to require the court to divide marital property contemporaneously with the entry of the dissolution decree. Ultimately, however, I believe the district court abused its discretion by granting the motion to bifurcate dissolution in this case. Accordingly, although on different grounds, I agree that the order granting motion to bifurcate should be reversed and the case remanded for an order dismissing this dissolution action that abated upon Susan’s death.
As we have previously recognized:
It is fundamental to our system of government that the authority for courts to act is conferred by the constitution or by statute. Yet, it is equally fundamental that in addition to these delegated powers, courts also possess broad powers to do whatever is reasonably necessary to discharge their traditional responsibilities. This type of judicial authority is known as inherent power, and it is derived from the separation of powers between the three *547 branches of government, as well as limited by it.
State v. Hoegh, 632 N.W.2d 885, 888 (Iowa 2001) (citation omitted). Courts possess this inherent authority in a number of areas. See, e.g., State v. Iowa Dist. Ct., 750 N.W.2d 581, 534 (Iowa 2008) (“Of course, when a court is acting within its jurisdiction it always has the inherent authority to do what is reasonably necessary for the administration of justice in a case before the court.”); In re K.N., 625 N.W.2d 731, 734 (Iowa 2001) (acknowledging district courts’ “authority to ensure the orderly, efficient, and fair administration of justice”); Johnson v. Miller, 270 N.W.2d 624, 626 (Iowa 1978) (recognizing district courts’ authority “to adopt rules for the management of cases on their dockets”); Iowa Civil Liberties Union v. Critelli, 244 N.W.2d 564, 569-70 (Iowa 1976) (recognizing district courts’ “inherent common-law power” to promulgate a local rule of criminal procedure); Peters v. Peters, 249 Iowa 110, 114, 86 N.W.2d 206, 209 (1957) (“In Iowa separate maintenance has not been a statutory remedy, and authority to grant that relief has been based upon the inherent power of courts of equity.”); Hardenbergh v. Both, 247 Iowa 153, 159, 73 N.W.2d 103, 106 (1955) (“[The] enforcement [of discovery] was an original and inherent power of a court of equity.”); Brooks v. Paulson, 227 Iowa 1359, 1361, 291 N.W. 144, 145 (1940) (“It is so well recognized that a court of Equity has the inherent power, in its discretion, to consolidate causes pending therein for the purpose of avoiding a multiplicity of suits, that citations are hardly necessary.”); In re Marriage of Ihle, 577 N.W.2d 64, 67 (Iowa Ct.App.1998) (recognizing inherent authority of trial judge to impose reasonable time limits on trial).
In my opinion, and as other courts have concluded, this inherent authority includes the authority to bifurcate dissolution and property division proceedings. See, e.g., Kronberg v. Kronberg, 263 N.J.Super. 632, 623 A.2d 806, 813 (Ch.Div.1993) (“ ‘[E]ven without the express authorization of the Legislature, New Jersey courts may decide whether it is in the best interests of the parties to permit a separate trial of ancillary matters after a divorce has been granted.’ ” (quoting Leventhal v. Leventhal, 239 N.J.Super. 370, 571 A.2d 348, 351 (Ch.Div.1989))); Sharp v. Sharp, 84 N.C.App. 128, 351 S.E.2d 799, 800 (1987) (allowing bifurcation after concluding statute did not. limit court’s authority to bifurcate); Rogers v. Damron, 23 Va.App. 708, 479 S.E.2d 540, 543 (1997) (“When it enacted Code § 20-109.1, the General Assembly was presumably aware of a divorce court’s inherent equity power to adjudicate separately the issues associated with a divorce.”). This conclusion is further buttressed, by the fact that we have allowed bifurcated procedures to determine other issues in dissolution proceedings. See, e.g., In re Marriage of Shanks, 758 N.W.2d 506, 510 (Iowa 2008) (allowing bifurcated trial to determine validity of prenuptial agreement before subsequent trial on property division and remaining issues); In re Marriage of Winegard, 257 N.W.2d 609, 612-13 (Iowa 1977) (allowing bifurcated trial to determine whether common law marriage existed).
I recognize that “some inherent powers may be controlled or restricted by statute.” Hoegh, 632 N.W.2d at 889. However, “[a] statute will not abrogate an inherent power of the court absent clear legislative intent.” Id. (emphasis added), Unlike the majority, I cannot conclude the legislature has enacted a statute that clearly demonstrates its intent to limit the inherent authority of the court to bifurcate dissolution proceedings.
The statute itself tends to support the conclusion that bifurcation can occur. In *548 relevant part, Iowa Code section 598.17 provides:
A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.
Nothing in this section requires the court to address all issues involved in dissolution proceedings within the decree. Nor is there clear language in this section that prohibits the court from entering a decree dissolving the marriage between the parties and reserving resolution of the remaining issues for a later date. See Hoegh, 632 N.W.2d at 889. In fact, it is not unusual for the parties to request such a bifurcation at the conclusion of the trial. Given trial judges’ busy schedules, everyone understands that it could take the court months to resolve all of the issues. See James Burd, Note, Splitting the Marriage in More Ways than One: Bifurcation of Divorce Proceedings, 30 J. Fam. L. 903, 909 (1992) [hereinafter Burd] (noting that “the time required to dissolve a marriage is substantially less than the time consumed by the disposition of marital property”). There are numerous circumstances in which the immediate entry of a decree dissolving the marriage may be necessary. See id. (identifying advantages of bifurcation); accord Brandon Carney, Comment, • Till Death Do Us Part — and Then Some: The Effect of a Party’s Death During Dissolution, 25 J. Am. Acad. Ma-trim. Law. 153,165-66 (2012) (same). Trial judges should not be precluded from granting such requests, and the statute does not clearly prohibit it.
The majority also cites Iowa Code section 598.21(1) in support of its perceived restriction on the court’s ability to bifurcate these proceedings. This section provides:
Upon every judgment of annulment, dissolution, or separate maintenance, the court shall divide the property of the parties and transfer the title of the property accordingly, including ordering the parties to execute a quitclaim deed or ordering a change of title for tax purposes and delivery of the deed or change of title to the county recorder of the county in which each parcel of real estate is located.
Iowa Code § 598.21(1). From the plain -language of the statute, the majority concludes two things. First, it concludes the statutory language “shall” requires the court to divide the marital property as part of the dissolution proceedings. I agree with this proposition. Second, it concludes the statutory language “upon every judgment” requires that the court contemporaneously enter its property division order when it enters the dissolution decree; it emphasizes the statutory word “upon,” asserting this language imposes a temporal limitation. For several reasons, I disagree with this latter conclusion.
As the majority notes, Webster's Third New International Dictionary contains several temporal definitions for “upon,” including “immediately following on” and “at the time of.” Webster’s Third New International Dictionary 2517-18 (unabr. ed.2002). But this is not the only definition of “upon,” that can also mean “thereafter” or be used to represent “an action or condition that is beginning.” Id. In my opinion, the plain language of this section simply means that as a condition of every dissolution, the court must divide the marital property. It could be immediately following the entry of the decree of dissolution or sometime thereafter. The entry of a decree of dissolution triggers the court’s *549 obligation to divide the marital property. But nowhere does the statute clearly establish that division of the marital property is a condition precedent to dissolving the marriage. See Hoegh, 632 N.W.2d at 889. In my opinion, the majority’s reliance on the word “upon” as demonstrating a clear legislative intent against bifurcation is extremely weak.
Perhaps because of its shaky textual analysis, the majority looks to other sources to support its conclusion. First, it turns to Iowa Code section 598.21(5) which, to quote the majority, “directs the court to consider in equitably dividing the property a number of factors that contemplate both parties are living when the final decree divides the marital property.” From this, the majority concludes the structure of section 598.21 clearly contemplates an equitable division of property no later than the decree of dissolution. But the majority selectively omits portions of section 598.21(5) that do not necessarily contemplate living parties. Other considerations a court is to consider in equitably distributing marital property include:
a. The length of the marriage.
b. The property brought to the marriage by each party.
c. The contribution of each party to the marriage, giving appropriate economic value to each party’s contribution in homemaking and child care services.
[[Image here]]
e. The contribution by one party to the education, training, or increased earning power of the other.
[[Image here]]
⅛. Any written agreement made by the parties concerning property distribution.
1. The provisions of an antenuptial agreement.
m. Other factors the court may determine to be relevant in an individual case.
Iowa Code § 598.21(5). Death of a party would not significantly alter the length of the marriage (given that the parties are seeking to dissolve it); affect the property brought to the marriage by each party; change the contribution of each party to the marriage; modify the contribution by one party to the education, training, or increased earning power of the other; or rewrite any written agreement made by the parties concerning property distribution or the provisions of any antenuptial agreement. Moreover, this is a nonex-haustive list. See id. § 598.21(5)(m). I do not see how the fact that some of the considerations contained in this nonex-haustive list contemplate living parties, while others do not, cuts in either direction with respect to the legislature’s intent regarding the authority of the court to bifurcate these proceedings.
Next, the majority looks to the Uniform Marriage and Divorce Act (UMDA), which expressly permits bifurcation of the dissolution decree and property division. See Unif. Marriage & Divorce Act § 302(a)(4) (amended 1973), 9 U.L.A. 200-01 (1998). It assumes the legislature was aware of the UMDA’s bifurcation provision, but expressly declined to follow it. In so concluding, the majority invokes the following principle: “We can determine legislative intent from selective enactment or divergence from uniform acts.” Freedom Fin. Bank v. Estate of Boesen, 805 N.W.2d 802, 814 (Iowa 2011). Notably, however, it does not apply this principle.
This principle would apply if the legislature had adopted some of the provisions of the UMDA but not others. In that case, it might be reasonable to infer the legislature considered the UMDA but declined to follow some of its provisions. For exam- *550 pie, we have applied this principle in interpreting the Iowa Probate Code because “[t]he Iowa legislature has selectively incorporated several provisions from the [Uniform Probate Code (UPC) ] into our state’s probate code.” Id. at 813. Because of this, in Boesen we concluded the fact that the legislature never adopted the UPC’s dower provision evidenced its intent that we not interpret Iowa’s dower provision consistent with the UPC. Id. at 813-14. But here, the majority cannot point to any provision of the UMDA that the Iowa legislature has adopted. In my opinion, absent some objective indication the legislature actually considered the UMDA and expressly accepted some provisions and rejected others, the mere fact that a uniform act exists and addresses a particular issue proves nothing about the legislature’s intent on the issue.
The majority also looks to the statutes of other states, some of which expressly allow for bifurcated divorces.' See, e.g., Cal. Fam.Code § 2337(a) (West, Westlaw current through ch. 2 of 2015 Reg. Sess.) (“In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues.”); 750 Ill. Comp. Stat. Ann. 5/401 (b) (West, Westlaw current through P.A. 99-3 of 2015 Reg. Sess.) (“The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances exist.”); Ind.Code Ann. § 31-15-2-14(a) (West, Westlaw current through 2015 Reg. Sess. with effective dates through April 29, 2015) (“The court may bifurcate the issues in an action for dissolution of marriage ... to provide for a summary disposition of uncontested issues and a final hearing of contested issues.”). The majority then assumes the legislature was aware of these statutory provisions allowing for bifurcated divorces, carefully debated the pros and cons, and consciously declined to adopt similar legislation. However, some state legislatures have prohibited bifurcation. See, e.g., Ark.Code Ann. § 9-12-315(a) (West, Westlaw current through April 8, 2015 of Reg. Sess.) (“At the time a divorce decree is entered ... [a]ll marital property shall be distributed....”); -Wash. Rev.Code Ann. § 26.09.050(1) (West, Westlaw current with legislation effective through May 11, 2015) (“In entering a decree of dissolution of marriage or domestic partnership ... the court shall ... make provision for the disposition of property and liabilities of the parties.... ”). Why not impute that knowledge to the legislature, assume it was aware of statutory provisions prohibiting bifurcated divorces, and conclude it consciously declined to adopt a similar one? The truth is, the legislature has done neither.
The majority also cites a number of policy considerations that disfavor bifurcation in support of its conclusion that bifurcated divorces are prohibited under Iowa law. It then concludes the legislature is the appropriate body to make policy judgments on whether to allow bifurcated divorces and, if so, under what conditions. This analysis is backwards. Absent a clear legislative enactment to the contrary, the court has the inherent authority to bifurcate dissolution and property division proceedings. Clearly, these policy considerations might be relevant in assessing whether a court abused its discretion in deciding whether to bifurcate these proceedings in a particular case. However, they should not implicitly guide this court’s statutory construction. We should not read this prohibition into the statute under the guise of construction. See Clarke Cnty. Reservoir Comm’n v. Abbott, 862 *551 N.W.2d 166, 177 (Iowa 2015) (“We will not write such a provision into the statute in the guise of interpretation.”); Doe v. Iowa Dep’t of Human Servs., 786 N.W.2d 853, 858 (Iowa 2010) (“We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.”); see also In re Det. of Geltz, 840 N.W.2d 273, 276 (Iowa 2013) (“‘When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms.’ ” (quoting State v. Chang, 587 N.W.2d 459, 461 (Iowa 1998))); McGill v. Fish, 790 N.W.2d 113, 118 (Iowa 2010) (“We do not search for legislative intent, beyond the express language of a statute when that language is plain and the meaning is clear.”).
Moreover, it is significant that Iowa is a no-fault divorce state. See In re Marriage of Dawson, 214 N.W.2d 131, 132 (Iowa 1974) (recognizing that Iowa is a no-fault divorce state). Thus, the legislature has generally endorsed the view that preserving unworkable marriages is disfavored and correspondingly that it prefers the swift resolution of such matters. See In re Marriage of Cooper, 769 N.W.2d 582, 587 (Iowa 2009) (“Indeed, our no-fault divorce law is designed to limit acrimonious proceedings.”). In certain circumstances, bifurcation can further this objective. Specifically, bifurcation can “accelerate! ] the dissolution of a marriage found to be irretrievably broken since the time required to dissolve a marriage is substantially less than the time consumed by the disposition of marital property.” See Burd, 30 J. Fam. L. at 909. This can allow the parties to “begin restructuring their lives,” and can “encourage[ ] parties to settle between the marriage dissolution and the time the property is distributed by the court.” Id.; accord Wolk v. Wolk, 318 Pa.Super. 311, 464 A.2d 1359, 1360-61 (1983). This counsels against reading Iowa Code section 598.21(1) as uniformly prohibiting bifurcation. See Burd, 30 J. Fam. L. at 905 (“No-fault divorce .laws provide the strongest policy arguments for bifurcation.”).
Finally, I fear the majority’s broad-sweeping rule will preclude bifurcation under all circumstances. This, even when both parties mutually agree to bifurcation, the court is presented with substantial evidence supporting the need for bifurcation, and after careful consideration, the court is convinced bifurcation is necessary to do justice between the parties. In this case, one party moved to bifurcate the proceedings and the other party objected. However, if both parties had consented to the bifurcation, I see no impediment to the court allowing a bifurcated procedure. As noted above, bifurcation can, under certain circumstances, be beneficial. If both parties agree to the procedure, I see no statutory impediment depriving the court of this authority and the litigants of the potential benefits.[2]
Courts have the inherent authority to bifurcate the entry of a dissolution decree with division of property proceedings absent some clear legislative enactment to the contrary. Unlike the majority, I cannot conclude Iowa Code section 598.21(1) clearly prohibits the court from bifurcating the dissolution decree and property division proceedings. Notwithstanding, *552 “courts can only exercise inherent authority out of genuine necessity, not merely theoretical circumstances.” Hoegh, 632 N.W.2d at 890. Ordinarily, we review a district court’s decision to bifurcate issues for an abuse of discretion. See State v. Helmers, 753 N.W.2d 565, 567 (Iowa 2008); State v. Jenkins, 412 N.W.2d 174, 176 (Iowa 1987); Briner v. Hyslop, 337 N.W.2d 858, 870 (Iowa 1983). “ ‘A court abuses its discretion when it exercised its discretion on “grounds or for reasons clearly untenable or to an extent clearly unreasonable.” ’ ” Helmers, 753 N.W.2d at 567 (quoting In re J.A.L., 694 N.W.2d 748, 751 (Iowa 2005)). Under the facts of this case, I would find that the district court abused its discretion in granting the motion to bifurcate dissolution.
Susan’s motion to bifurcate dissolution was resisted by Ronald. Although there was a hearing on the motion, it was unreported. See Hoegh, 632 N.W.2d at 890 (noting that courts should develop a record to support exercise of inherent powers); Webster Cnty. Bd. of Supervisors v. Flattery, 268 N.W.2d 869, 876-77 (Iowa 1978) (same). The district court’s order granting motion to bifurcate reveals that it heard no testimony concerning the issue; instead, it relied on the statements of counsel, Susan’s motion, as supplemented, and Ronald’s resistance. The district court summarily granted the motion one day after the hearing without explanation other than “for the reasons stated in [Susan’s] Motion.” These reasons included: (1) that a trial date had not been set, and Susan had very little time left such that she was unlikely to “survive her condition for a trial in [the] matter”; and (2) that “she would like to have [the] marriage dissolved prior to her passing.” The decision whether to bifurcate cannot be made in such’a summary fashion. This was not a joint request by the parties to bifurcate. As the parties’ briefs make abundantly clear, the substantial rights of each of the parties were affected by the decision. The decision also had dramatic economic consequences for the parties. Compare Iowa Code § 598.21(5) (requiring the court to divide marital property equitably between the parties), with id. § 633.236 (establishing right to elective share for surviving spouse). The entry of a decree dissolving a marriage leads to direct and immediate statutory consequences. As noted earlier in this' opinion, this is not a circumstance where bifurcation would further the interests of justice between the parties. In my opinion, there was insufficient support for the district court’s exercise of its discretion on the issue of bifurcation. The lack of a sufficient record or explanation demonstrating that the district court thoughtfully exercised its discretion leads me to conclude it abused its discretion in granting the motion to bifurcate dissolution.
For these reasons, I agree with the majority that the district court’s order granting motion to bifurcate should be reversed and the case remanded for an order dismissing this dissolution action that abated upon Susan’s death. However, I cannot sign on to the majority’s new, broad-sweeping interpretation of the Iowa Code that prohibits the court from bifurcating dissolution proceedings in all cases.
CADY, C.J. and HECHT, J„ join this . special concurrence.

. In some jurisdictions, even if a statute or caselaw generally prohibits bifurcation, courts permit split proceedings upon the mutual request of the parties. See, e.g., Forrest v. Forrest, 279 Ark. 115, 649 S.W.2d 173, 174 (1983) (“[W]e see no reason why, if the parties so desire and specifically agree, that the trial court cannot postpone the division of the property until a later date.”). But see, e.g., Yeo v. Yeo, 214 Mich.App. 598, 543 N.W.2d 62, 64 (1995) (holding parties’ joint stipulation to bifurcated procedure was of no consequence because of court rule prohibiting bifurcation).