**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2263-23
      A-2276-23

DOROTHY MAKINS,

  Petitioner-Respondent,

v.

PALACE REHAB & CARE
CENTER,

  Respondent-Appellant,

and

PREMIER CADBURY, LLC,

  Respondent-Respondent.
_____

DOROTHY MAKINS,

  Petitioner-Appellant,

v.

PALACE REHAB & CARE
CENTER and PREMIER
CADBURY, LLC,

Respondents-Respondents.

_____

Argued April 9, 2025 – Decided April 24, 2025

Before Judges Sabatino and Gummer.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition Nos. 2013-18567, 2018-16895 and 2018-16946.

Erin L. Henderson argued the cause for Palace Rehab & Care Center, appellant in A-2263-23 and respondent in A-2276-23 (Jasinski, PC, attorneys; David F. Jasinski, of counsel; Erin L. Henderson, on the briefs).

Richard Rubinstein argued the cause for Dorothy Makins, appellant in A-2276-23 and respondent in A-2263-23 (Barnaba & Marconi, LLP, attorneys; Mario L. Barnaba, of counsel; Richard Rubinstein, on the briefs).

Hal H. Neeman argued the cause for respondent Premier Cadbury, LLC (Brown & Connery, LLP, attorneys; Hal H. Neeman, on the briefs).

PER CURIAM

Petitioner Dorothy Makins and her former employer, respondent Palace Rehab & Care Center (Palace), appeal from a decision dismissing with prejudice two worker's compensation claim petitions she had filed against another former

employer, respondent Premier Cadbury, LLC (Cadbury).[1] After conducting a bifurcated trial, a judge of compensation found petitioner had not sustained her burden of proof on the issue of whether her injuries were causally related to the alleged workplace accidents at Cadbury. Considering our deferential standard of review and the evidence presented, we affirm.

I.

Petitioner began working as a licensed certified nursing assistant (CNA) in 1992. As a CNA, petitioner provided care to patients, including "[f]eeding them, dressing them, washing them . . . put[ting] them . . . in and out of bed," and "[t]oilet[ing] them." She worked at various facilities over the course of her career. From 2008 to 2016, petitioner was employed by Palace. Petitioner began her employment with Cadbury in 2015, initially working shifts for both Palace and Cadbury. After she resigned from Palace in 2016, she worked full time for Cadbury. Cadbury terminated her employment on June 17, 2018.

In 2013, petitioner filed with the Division of Workers' Compensation a claim petition in which she contended she was injured while helping a patient out of bed on June 5, 2013, when she was working for Palace. She alleged in

---

[1] We consolidated these back-to-back appeals for purposes of issuing a single opinion.

A-2263-23

that claim petition against Palace she had suffered a "[b]ack injury with radiating pain and numbness into [her] right leg." On August 22, 2017, a judge of compensation issued an order approving the parties' settlement of that claim.[2] On June 12, 2018, petitioner filed an "application for review or modification" of the award she had received. She asserted in that application she was experiencing "additional pain in [her] low back area into legs."

On June 19, 2018, petitioner filed two additional claim petitions, naming Cadbury as her employer. In one claim petition, she based her claim on an accident she alleged took place on February 11, 2018. She stated the injury from that accident occurred as she was "[p]icking up [a] resident." She described the injury as "[a]ggravation of low back injury with pain into legs." In the other claim petition, she based her claim on an accident she alleged took place on June 8, 2018. She stated the injury from that accident occurred as she was "[p]icking up [a r]esident." She described the injury as "[i]njury to left hip, left knee, low back pain into left leg." In its answers to the claim petitions, Cadbury denied

---

[2]  The order appears to reference other case numbers, which were crossed out, and other accident dates. Petitioner testified that settlement also resolved a claim regarding a May 5, 2015 accident at Palace and an occupational claim for injuries sustained from repetitive job duties at Palace from 2009 to 2017.

petitioner had "sustained an occupational injury arising out of or in the course of employment."

For each of the three claim petitions (one against Palace and two against Cadbury), the parties' lawyers and a judge of compensation executed a "pre-trial memorandum." In the pre-trial memorandum for the 2013 Palace claim, "[c]ausal [r]elationship" and "[n]ature and extent of [p]ermanent [i]njury" were checked as being "at issue." Under "Other Issues," the following was added: "Bifurcated – causal relationship initially and nature and extent of permanent injury if experts need to testify." In the pre-trial memoranda for the Cadbury claims, "[a]ccident," "[c]ausal [r]elationship," "[i]njuries," "[a]rise out of [e]mployment," "[i]n course of [e]mployment," "[t]emporary," "[n]ature and extent of [p]ermanent [i]njury" were checked as being "at issue," and "[b]ifurcated as to occurrence of accident, causal relationship, etc. initially then nature and extent of permanent injury if experts need to testify" was written under "Other Issues." Nothing on the pre-trial memoranda indicates plaintiff objected to the bifurcation of the trial.

A-2263-23

The trial took place on three days in 2023. At the trial, petitioner was represented by counsel.[3] Petitioner testified during the first day of the trial. At the start of her testimony, the judge asked petitioner if she was "under the influence of drugs or alcohol that would interfere with [her] testimony," to which she responded, "[n]o." However, moments later when her counsel asked if she was "under the influence [of] or . . . taking any medications currently," she responded that she was taking oxycodone and muscle relaxers, which affected her memory. She also testified she suffered from memory issues as a result of "Long COVID," after contracting and being hospitalized with the virus in 2020.

Petitioner testified about the two alleged accidents that were the bases of her claims against Cadbury. Regarding the February 11, 2018 accident, petitioner testified she was "lifting a patient" and something happened with her lower back. Petitioner initially did not recall the person at Cadbury to whom she had reported the incident but later testified she had told her supervisor, whose name she did not recall, about it. According to petitioner, she finished her shift that day and worked the next two days. On February 14, 2018, she went to a hospital, where she was told she had hurt her back and leg. She stayed

---

[3] The attorney who represented petitioner at trial is listed on her appellate merits brief as being "of counsel."

A-2263-23

home for two days, went back to work on light duty for a week, and then resumed work on full duty.

Regarding the June 8, 2018 accident, plaintiff testified she was "lifting a lady up, putting her on the toilet" when she "felt a sharp pain in [her] back." She stated that when the patient dropped a box of tissues, she bent down to pick it up but fell to the floor, hitting her back and left hip and making the pain worse. A nurse entered the room, and petitioner told her what had happened. According to petitioner, later that day someone named "Susan" completed an incident report. Petitioner testified she signed the report that night before she left work but had not read it before she signed it because she was in "so much pain." On direct examination, she acknowledged the incident report contained a different version of how the accident had happened, stating she had been passing out trays when her leg gave out. Petitioner denied that had happened and denied telling Susan that had happened. She asserted she had told Susan she hurt her back lifting a patient.

According to petitioner, Susan told her to go see her family doctor. She stayed home from work for four days, put ice on her back, and then went to see her doctor. She was referred to an orthopedist, who gave her an injection for pain. He eventually referred her to Dr. Christopher Kepler, a surgeon in his

7

practice. She told Dr. Kepler she had fallen at work. In the meantime, she had at least two appointments with "Concentra" scheduled by someone at Cadbury. According to petitioner, she told someone at Concentra she had injured her back at work.

On cross examination, petitioner testified she did not recall reading all of the paragraphs contained in the certification she had signed and submitted in support of her motion for medical and temporary benefits. Cadbury's counsel questioned her about an incident report dated February 16, 2018, which was signed not by petitioner but by a supervisor. The report contained the following handwritten response to a question about how the incident had occurred: "Overall strain on back – did not occur with just [one] resident."

The judge in his written decision described her response as follows:

> When petitioner was asked about telling the supervisor she hurt her back with no particular incident and did not occur with just one incident, petitioner became silent, her head went down, she would not make eye contact with respondent attorney, she did not speak for a period that was uncomfortable, shrugging with [a] lack of expression. Finally, she stated "No" I don't recall that. When pressed again by respondent attorney that she told her supervisor she hurt her back with no particular incident, she became agitated, she tensed up, pursed her lips, rapid blinking, a complete shift in expression, with a differentiation in a rising pitch, "My memory . . . . My memory . . . . I don't recall that."

A-2263-23

Cadbury's counsel also asked her about the incident report regarding the alleged accident on June 8, 2018, and the discrepancy between her testimony and the information contained in the report about how that incident had occurred. She confirmed she had signed the form but had not read it. She initially did not respond when counsel asked her if she recalled stating the incident had occurred as described in the report: "Employee was simply walking, passing out trays and performing routine duties when she felt sharp pain in her left hip like a dislocation – now has radiated to lower back." After he pointed to the description on the report, she responded: "This didn't happen like this."

Cadbury's counsel showed petitioner a June 14, 2018 document entitled "Workers Compensation – First Report of Injury or Illness." That document contained the following description of how her injury had occurred: "Employee was simply walking, passing out trays and performing routine care when she felt a sharp pain in her left hip/lower back." She stated she did not "agree" with that description.

Counsel showed her notes prepared by a physician's assistant regarding her June 13, 2018 appointment at the orthopedic practice. The notes contained the following:

A-2263-23

> [The patient] states that she has been having low back pain for approximately a month. She states that a few [sic] last week at work when she was in a standing position, her leg gave out and she did not fall. She states that her knee has been feeling painful as well.

Petitioner did not agree with that description of her injury and what caused it and denied providing that description to the doctor.

Counsel showed petitioner records from her June 14, 2018 appointment at Concentra. That document contained the following history:

> Patient states that as she was walking her left leg gave out, she was able to prevent herself from falling, she states she sat down and rested and later in the day the same thing happened again. She reports since then she has been experiencing lower back pain, left knee and left hip pain. She states that her left knee appears to slip out of place and she is unable to resume regular activity until it returns to a normal position. She reports a history of arthritis to the back. She denies slipping, tripping or other mechanics of injury.

Petitioner denied the accuracy of that description.

Counsel showed petitioner a report prepared by a Concentra doctor regarding petitioner's June 18, 2018 appointment. The doctor described petitioner as having a "pre-existing condition." Petitioner did not recall discussing with the doctor any pre-existing conditions or the alleged work accident or injury in June 2018.

A-2263-23

Counsel showed petitioner a report prepared by her orthopedist regarding her July 2, 2018 appointment. The doctor described petitioner as having "a history of chronic recurrent lower back pain for many years" and "severe osteoarthritis of her left knee." The doctor stated she "denies specific injury, but states her symptoms began insidiously with aching back discomfort. Symptoms got progressively worse in the last three months." After counsel read to her that portion of the report, petitioner admitted she "had existing problems" and stated she did not recall having any discussions with the doctor about what she said had happened at Cadbury.

The last document Cadbury's counsel showed petitioner was a report prepared by a doctor at Cadbury's counsel's request following an examination of petitioner. According to that doctor:

> [Petitioner] indicated ongoing problems with her lower back since an earlier work injury on 08/08/17 when assisting a 200-pound female patient at work. She indicated that she was helping the patient off of the toilet when she hurt her lower back. She complained of ongoing problems with the lower back since that time. This precedes the alleged injuries of 02/11/18 and 06/08/18. She did not indicate any injuries occurring at work on those dates.

Petitioner did not recall being examined by the doctor, did not recall giving him that history, and disagreed with that description of the history of her injury.

When asked if the author of those medical reports had written incorrect histories of what had occurred on February 11, 2018, and June 8, 2018, petitioner responded, "I just don't remember." She maintained she "was lifting and [she] got hurt." On redirect examination, she denied giving anyone a version of the events other than she was injured when lifting patients on February 11, 2018, and June 8, 2018. In response to a question from Palace's counsel, petitioner agreed with a statement by Dr. Kepler in a May 21, 2019 report that her "medical records identif[y] discrete injuries on February 11, 2018, and June 8, 2018, both of which led her to seek treatment at Concentra. Both events, which exacerbated her back and leg pain were related to picking up resident in a rehab facility at which she worked at that time."

The judge began the second day of the trial by noting the parties had "concluded for the causal relationship portion, testimony from the [p]etitioner's attorneys and now we are going to go into the [r]espondents for . . . Cadbury and there [are] two proposed witnesses . . . . " No one objected to the judge's reference to the bifurcated nature of the trial. Petitioner's counsel, joined by Palace's counsel, objected to the witnesses Cadbury intended to present: Carole Tate, who was Cadbury's director of nursing in 2018, and Susan Duban, who was an executive assistant and "[s]upervisor for the front desk" in 2018 and

12

"Human Resources Coordinator" at Cadbury at the time of trial. Petitioner's counsel objected to those two witnesses testifying, arguing they could not authenticate or lay a foundation for the documents about which they would be testifying. He also asserted petitioner's due-process rights would be violated if the judge admitted reports into evidence when petitioner was "unable to confront the witness who actually . . . prepared [the] document." Reserving on the objection, the judge held the witnesses could testify "conditioned on them laying the proper foundation . . . ."

Duban testified about the procedures Cadbury followed then and in 2018 when an employee reported having a work-related injury and the documentation prepared in connection with reported work-related injuries. She testified about the incident reports completed for the 2018 accidents and about the Workers Compensation First Report. She explained the information on the Workers Compensation First Report is based on the information in the related incident report and confirmed page one of the First Report was signed by Cadbury's director of human resources. She testified page two of the incident report regarding the alleged June 8, 2018 accident was missing.

Tate testified she would have first-hand knowledge of any work-related incidents that occurred and would help prepare the incident reports. She

13

confirmed the standard procedure was for the employee's supervisor to complete an incident report and then give it to the director of nursing to review and sign. Tate confirmed she had created the incident report for the alleged February 11, 2018 accident based on the information petitioner gave her. She testified someone else created the incident report regarding the alleged June 8, 2018 accident, but she had reviewed and signed it.

After Tate completed her testimony, the judge admitted into evidence the incident reports and the Workers Compensation First Report pursuant to the business records hearsay exception, N.J.R.E. 803(c)(6). The judge then asked Cadbury's counsel if he was calling any other witnesses. Cadbury's counsel advised the court he understood the other counsel were objecting to admitting into evidence the medical records he had questioned petitioner about on cross-examination. Accordingly, he planned to present witnesses or certified statements from the medical providers to authenticate those documents.

Apparently in response to that statement, petitioner's counsel reminded the judge that when counsel and the judge initially had discussed the case, the judge "wanted to bifurcate and said that [he] wanted to determine causation without any doctors testifying." Cadbury's counsel agreed, explained he had "no interest in what the [d]octors are testifying to, they just took a history of the

[p]etitioner," and indicated "the only purpose" in calling the witnesses from the medical providers' offices was to establish the records admissibility under N.J.R.E. 803(c)(6). Petitioner's counsel complained about having to "pay a doctor to have the [d]octor testify as to the partial records and then it's determined we then have to bring the doctor in and pay them again." Cadbury's counsel confirmed the testimony he intended to elicit from the medical-provider witnesses would have "nothing to do with medical standards, just they took a history, what is contained in the documents is a standard history statement that they would take from [petitioner] when they examined her."

Based on that representation, the judge advised petitioner's counsel:

> [I]t is up to you whether you want to bring a doctor in to challenge impeachment evidence, if that evidence gets in, as to the [p]etitioner says X, [d]octor says Y as to the – it appears that – I don't know the full amount of . . . what was said to the doctor. I don't believe it's a medical issue, I'll leave it up to you whether you want to bring a doctor in. I'm not going to preclude [Cadbury's counsel] to using or trying to get that evidence in. We will have to revisit, just like we did on this . . . .

The judge began the third day of trial by stating the following:

> Good morning. We were going to have testimony of fact witnesses today -- actually it was scheduled earlier in the week or the week before, but we postponed it until today. It's my understanding there's an agreement on stipulations as to certain documents, both coming

15

from the [p]etitioner and the [r]espondent going into evidence without objection . . . .

The judge asked petitioner's counsel if he was "clear on that." Petitioner's counsel responded:

> Yes, you are, your Honor. The [p]etitioner is offering seven exhibits which are marked P-2 through P-8. My understanding is there will be no objection by the [r]espondent. In turn, the [r]espondent is offering five documents which the [p]etitioner has not objected to either. We have also got the consent of [c]ounsel for Palace . . . .

The judge confirmed with counsel for Palace and Cadbury that petitioner's counsel had accurately summarized their agreement. The judge identified the documents each counsel sought to admit into evidence. After counsel for each party confirmed he consented to the admission of each document into evidence, the judge admitted them into evidence.

On February 16, 2024, the judge issued an order and written decision dismissing petitioner's claims against Cadbury. At the beginning of the decision, the judge noted the trial had been "bifurcated on the issue of compensability" and that "[t]he only issue in dispute for this proceeding [was] whether the injuries are causally related to the alleged workplace accidents." The judge reviewed petitioner's testimony in detail, pointing out the inconsistencies within her testimony and between her testimony and the

16

information contained in the documents admitted into evidence and the times she did not respond to questions or responded by indicating she had no recollection. The judge acknowledged the Workers Compensation First Report had been admitted into evidence but stated he had given it "no weight." The judge found petitioner was "not credible," explaining:

> When the petitioner testified about facts that were in her favor, she testified in a comprehensible, intelligible, crystalline manner. When the petitioner was asked about facts that were not in her favor, her demeanor changed and she became quiet, did not answer for an uncomfortably long time, her head went down, and she would not make eye contact.

The judge held petitioner had failed to prove by a preponderance of the evidence that her injuries was causally related to the alleged accidents at Cadbury and dismissed the claims against Cadbury with prejudice. The judge stated he had not made "a finding on causal relationship" regarding the claim against Palace and held that case would proceed.

On appeal, petitioner argues the court confused legal causation and medical causation, improperly relied on petitioner's testimony to determine her credibility, and improperly relied on certain "hearsay documents." In its appeal, Palace argues the Cadbury incident reports did not satisfy the requirements under N.J.R.E 803(c)(6) to be admitted into evidence as business records, the

17

judge improperly relied on those incident reports and the Workers Compensation First Report, and petitioner was denied due process when Cadbury did not produce the author of the incident report regarding the alleged June 8, 2018 accident. Unpersuaded by those arguments, we affirm.

II.

"Our review of decisions from the workers' compensation court are decidedly deferential" in recognition of "'the compensation court's expertise and the valuable opportunity it has had in hearing live testimony.'" Ripp v. Cnty. of Hudson, 472 N.J. Super. 600, 606 (App. Div. 2022) (quoting Hager v. M&K Constr., 246 N.J. 1, 18 (2021)). Accordingly, our review in workers' compensation cases is generally "limited to whether the findings made could have been reached on sufficient credible evidence present in the record . . . ." Hersh v. Cnty. of Morris, 217 N.J. 236, 242 (2014) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)). We reverse a compensation judge's findings only if "they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" McGory v. SLS Landscaping, 463 N.J. Super. 437, 452-53 (App. Div. 2020) (quoting Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244,

262 (2003)). "[W]e review the court's legal findings and construction of statutory provisions de novo." Hager, 246 N.J. at 18.

"The [Workers' Compensation] Act[, N.J.S.A. 34:15-1 to -147], authorizes workers' compensation benefits to an employee injured in an 'accident arising out of and in the course of employment.'" Lapsley v. Twp. of Sparta, 249 N.J. 427, 430 (2022) (quoting N.J.S.A. 34:15-7). Under the Act, the petitioner must first establish a "causal connection between the employment and the injury." Sexton v. Cnty. of Cumberland, 404 N.J. Super. 542, 549 (App. Div. 2009). After this initial burden is met, the petitioner must then prove "it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." Ibid. (quoting Howard v. Harwood's Rest. Co., 25 N.J. 72, 83 (1957)). A petitioner has "the burden of proof to establish all elements of [her] case." Bird v. Somerset Hills Country Club, 309 N.J. Super. 517, 521 (App. Div. 1998). She has the burden of proving she "suffered a compensable accident." Wilkins v. Prudential Ins. and Fin. Servs., 338 N.J. Super. 587, 591 (App. Div. 2001).

Petitioner based her claims against Cadbury on her allegation she was injured in two separate accidents that allegedly occurred when she was picking up residents at Cadbury on February 11, 2018, and June 8, 2018. Thus, to be

awarded workers' compensation benefits, petitioner had to prove those two alleged accidents occurred and that she sustained her injuries in those accidents. As confirmed in the pre-trial memoranda, which were executed by the judge and counsel, the trial of petitioner's claims was "[b]ifurcated as to occurrence of accident, causal relationship, etc. initially then nature and extent of permanent injury if experts need to testify."

We ordinarily review a judge's decision to bifurcate for an abuse of discretion. Beasley v. Passaic Cnty., 377 N.J. Super. 585, 611 (App. Div. 2005). The record is devoid of any indication any party objected to the bifurcation decision in this case. See Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (citing R. 2:10-2, court explains plain-error standard applies when a party fails to object at trial and requires the appellate court to disregard any error unless it is "clearly capable of producing an unjust result."). But under either the plain-error or abuse-of-discretion standard of review, we perceive no basis for reversal.

The bifurcation did not result in the exclusion of evidence necessary for petitioner to prove she had suffered a compensable accident nor did it prevent petitioner from rebutting attacks on her credibility. Cf. Diodato v. Rogers, 321 N.J. Super. 326, 335, 339 (Law Div. 1998) (granting plaintiff's new trial motion

because bifurcation prevented plaintiff from rebutting attacks on his credibility).

Petitioner has not demonstrated how, as she claims, her ability to prove the alleged accidents occurred and caused her injuries was dependent on testimony from her treating physicians. Moreover, saying it was "up to [counsel]," the judge expressly permitted petitioner's counsel "to bring a doctor in to challenge impeachment evidence . . . ." and scheduled a third day of trial for the presentation of additional witnesses. Petitioner's counsel chose not to call those witnesses and instead reached an agreement with the other counsel regarding the admission of documents into evidence. On that record, we see no confusion by the judge between legal causation and medical causation and neither an abuse of discretion nor plain error on the bifurcation decision.

Petitioner would have us disregard the judge's assessment of her credibility. That we cannot do. A court on review should "especially defer to a judge of compensation's credibility findings as these determinations are 'often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record.'" Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014) (quoting State v. Locurto, 157 N.J. 463, 474 (1999)). "Due regard must be given

21

to the opportunity of the one who heard the witnesses to judge their credibility." Lindquist, 175 N.J. at 260.

Petitioner seems to fault the judge not for the credibility finding he made – petitioner was not credible – but for considering her testimony for any purpose whatsoever. The problem with that argument is that petitioner and her counsel chose to have her testify, fully aware of what medication she had taken and her Long COVID condition and their potential effects on her memory. Nothing in the record indicates petitioner or her counsel asked the judge for an adjournment or to "terminate the proceedings until [p]etitioner was free of impairing substances." Moreover, her testimony about whether she was under the influence of anything that would interfere with her testimony was inconsistent. When asked by the judge, she answered "[n]o"; when asked by her counsel if she was taking any medication, she said she was taking oxycodone and muscle relaxers, which affected her memory.

And the judge's assessment of petitioner's credibility was not based just on what petitioner said or didn't say or her lack of memory. It also was based on how she testified and the differences in her demeanor when she testified about facts that were in her favor and when she testified about facts that were not in

her favor. On that record, we perceive no error in the judge's consideration of petitioner's testimony or conclusion it was incredible.

Petitioner and Palace fault the judge for admitting into evidence and relying on the incident reports regarding the alleged accidents at Cadbury and the Workers Compensation First Report. They also claim petitioner was denied due process because Cadbury did not produce the author of the incident report concerning the June 8, 2018 accident. However, a judge of compensation is not bound strictly by the Rules of Evidence, see N.J.S.A. 34:15-56, and may admit documents into evidence without authentication testimony, see Lindquist, 175 N.J. at 260. And their arguments are belied by the record.

The judge stated in his written decision he gave no weight to the Workers Compensation First Report. Tate testified she had created the incident report about the alleged February 11, 2018 accident and had reviewed and executed the incident report about the alleged June 8, 2018 accident. Petitioner admitted she had signed the first page of the June 8, 2018 incident report, which contained a description of the purported accident that did not match the description petitioner gave on her claim form or in her testimony. Counsel for all parties consented to the admission of these three documents into evidence. On that record, we perceive no due-process violation or basis to reverse on either a plain-

error or invited-error standard of review. See Willner, 235 N.J. at 79 (explaining plain-error standard); N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 367 (2017) (explaining the invited-error standard "operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error" (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996))).

To sustain her claim, petitioner had to prove she was injured when she lifted patients at Cadbury on February 11, 2018, and June 8, 2018. She had to prove she "suffered a compensable accident" on those days as alleged in her claim petitions. Wilkins, 338 N.J. Super. at 591. The judge who heard and observed her testimony found it not credible. That judge allowed her to "bring a doctor in to challenge impeachment evidence," but she chose not to do so. The judge rightly concluded she had failed to meet her burden of proof. On that record, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2263-23